**UNITED STATES of America,**
**Appellee,**

v.

**Gary C. PRATT, Defendant, Appellant.**

**No.  05–2624.**

United States Court of Appeals,
First Circuit.

Heard Jan. 11, 2007.

Decided June 3, 2009.

Judith H. Mizner, Assistant Federal Public Defender, for appellant.

Terry L. Ollila, with whom Thomas P. Colantuono, United States Attorney, and Aixa Maldonado–Quiñones, Assistant United States Attorney, were on brief, for appellee.

Before BOUDIN and LIPEZ, Circuit Judges, and SHADUR,* District Judge.

LIPEZ, Circuit Judge. .

We must revisit this case, our earlier decision having been vacated and the case remanded by the United States Supreme Court. *Pratt v. United States*, —— U.S. ——, 129 S.Ct. 991, 173 L.Ed.2d 284 (2009) (mem.).

Gary Pratt was convicted of being a felon in possession of a handgun under 18 U.S.C. § 922(g)(1) and sentenced as an armed career criminal pursuant to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). On appeal, he challenged his conviction and sentence, and we affirmed both. *United States v. Pratt*, 496 F.3d 124 (1st Cir.2007). With respect to his sentence, we rejected Pratt's argument that his prior conviction under New Hampshire's criminal escape statute did not count as a "violent felony" conviction for purposes of the ACCA. We based that decision on an earlier case, *United States v. Winn*, 364 F.3d 7, 12 (1st Cir.2004), in which we had concluded that all New Hampshire escape crimes are "violent" for purposes of the Career Offender Guideline enhancement, whose definition of a predi-

* Of the Northern District of Illinois, sitting by    designation.

cate "crime of violence" is almost identical to § 924's definition of "violent felony." *Pratt*, 496 F.3d at 130; U.S.S.G. §§ 4B1.1, 4B1.2. Subsequently, the Supreme Court decided in *Chambers v. United States*, — U.S. ——, 129 S.Ct. 687, 172 L.Ed.2d 484 (2009), that criminal escapes of the kind committed by the defendant in *Winn* are not crimes of violence for ACCA sentencing purposes. Because our first decision in this case had relied upon *Winn*, which is no longer good law, the Supreme Court granted certiorari in this case, vacated, and remanded to us for reconsideration of the ACCA sentence.

Upon reconsideration, we again affirm Pratt's sentence as an armed career criminal. We determine that, unlike the failure-to-report crime at issue in *Chambers*, Pratt's escape from secure custody was a crime of violence. The rest of our decision, which relates to Pratt's argument that the evidence was insufficient to support the verdict because the government failed to introduce into evidence a stipulation as to two elements of his offense, and the concurring opinion on the stipulation issue, are unchanged.

## I.

We state the facts "as the jury could have found them, drawing all inferences in the light most consistent with the jury verdict." *United States v. Milkiewicz*, 470 F.3d 390, 392 (1st Cir.2006). Immediately following his release from prison, Pratt lived on and off with Melody Isham–Pilotte, who purchased a .357 caliber Glock semiautomatic pistol at his instruction and filled out the paperwork as the purchaser. Pratt then kept the gun with him and used it on several occasions to fire at signs and beer cans. At one point, after crashing Isham–Pilotte's car and leaving the scene of the accident, he called to tell her that he had left the gun in the trunk of the car.

Isham–Pilotte was able to retrieve the gun.

Eventually, Pratt was arrested for failure to appear in court on an unrelated matter, and, after an investigation uncovered the events described above, he was charged with being a felon in possession of a firearm. His indictment stated that the government intended to seek a sentencing enhancement under the ACCA, which provides a fifteen-year mandatory minimum term for a defendant with three prior violent felonies or serious drug offenses.

Before trial, the parties filed a stipulation agreeing that the handgun had been transported in interstate or foreign commerce. The stipulation also identified five previous crimes for which Pratt had been convicted. With respect to those crimes, the stipulation stated that "the jury should be instructed by the Court that 'the defendant agrees he was previously convicted of a crime punishable by imprisonment for a term exceeding one year' without further elaboration or explanation." *See infra* Section II.A.

At trial, the prosecution told the jury in its opening statement that the gun in question had traveled in interstate commerce and that Pratt previously had been convicted of a crime punishable by imprisonment for more than one year. However, the stipulation providing the evidentiary support for this statement was never presented to the jury as evidence prior to the close of evidence, and the prosecution did not introduce other evidence that the gun had traveled in interstate commerce or that Pratt was a convicted felon.

After the close of evidence, the court issued its instructions to the jury. It first provided a general instruction on stipulations:

> During the course of trial, you were told that the government and the defendant

agreed or stipulated to certain facts. This simply means that both sides accept those facts to be true. Because there is no disagreement regarding those facts, there was no need for either side to introduce evidence relating to them. You may accept as true those facts to which the government and the defendant have stipulated.

With respect to the charged offense, the court instructed the jury that, under 18 U.S.C. § 922(g)(1), the government must prove that: (1) the defendant had been convicted of a felony (which it defined as a "crime punishable by imprisonment for a term exceeding one year"); (2) the defendant possessed a firearm; and (3) the firearm had traveled in interstate commerce. It then explained that Pratt

> has stipulated or agreed that ... he was convicted of an offense punishable by imprisonment for a term exceeding one year. Because there is no disagreement regarding that fact, there was no need for the government to introduce any evidence relating to it. As I mentioned earlier, you may accept as true the facts to which the government and the defendant have stipulated or agreed.

The court also stated that Pratt

> has stipulated that the Glock semi-automatic pistol at issue in this case traveled across the state boundary line at some time after its manufacture. Because the parties do not disagree as to that fact, there was no need for the government to introduce any evidence relating to it and you may accept as true the fact that the Glock semi-automatic pistol traveled in or affected interstate commerce.

Pratt did not object to these instructions. The jury returned a guilty verdict.

During his sentencing hearing, Pratt objected that he did not qualify for an enhanced sentence under the ACCA because his prior offenses did not include three violent felonies. The court rejected his objections and imposed the statutory minimum sentence of fifteen years. This appeal ensued.

## II.

### A. Stipulation to Essential Elements

To establish a violation of 18 U.S.C. § 922(g)(1), the government must prove three elements beyond a reasonable doubt: (1) the defendant possessed a firearm; (2) the firearm had traveled in interstate commerce; and (3) the defendant had been convicted of a felony prior to his possession of the firearm. Although Pratt did not claim at trial that his stipulation relating to the interstate commerce element and the prior conviction element was not introduced into evidence, he now challenges the sufficiency of the evidence to support his conviction on those elements. We review an unpreserved challenge to the sufficiency of the evidence only for plain error, *United States v. Peña–Lora*, 225 F.3d 17, 26 (1st Cir.2000), and will reverse only if the conviction would result in a "clear and gross injustice," *United States v. Bello–Perez*, 977 F.2d 664, 668 (1st Cir. 1992).

Technically, the court erred by first presenting the subject matter of the stipulation to the jury in its jury instructions, after the close of evidence. Ordinarily, unless there is a contrary agreement between the parties, district courts should ensure that a stipulation, or the content thereof, is presented to the jurors prior to the close of evidence. This presentation may take various forms: the stipulation itself could be entered into evidence, the court could read the stipulation into evidence, or the parties could agree that one of them will publish the stipulation to the jury. The presentation will often include an explanation by the court that the stipu-

lation means that the government and the defendant accept the truth of a particular proposition of fact, and, hence, there is no need for evidence apart from the stipulation itself.

The concurrence suggests that "no settled rule exists as to how the jury is to be informed of a stipulation."[1] We do not disagree. In fact, we have suggested a variety of ways in which a jury could be informed of the content of a stipulation. However, in our view, there is a settled rule that the content of a stipulation must be published to the jury prior to the close of evidence. That settled rule is confirmed by a review of the pattern jury instructions from the circuits. For example, the Pattern Criminal Jury Instructions for the District Courts of the First Circuit state, with respect to stipulations:

> The evidence in this case includes facts to which the lawyers have agreed or stipulated. A stipulation means simply that the government and the defendant accept the truth of a particular proposition or fact. Since there is no disagreement, there is no need for evidence *apart from the stipulation.* You must accept the stipulation as fact to be given whatever weight you choose.

*Pattern Criminal Jury Instructions for the District Courts of the First Circuit* § 2.01 (1998), *available at* http://www.med.uscourts.gov/practices/crpji.97nov.pdf (last visited May 14, 2009) (emphasis added).[2] Other circuits similarly acknowledge the evidentiary nature of stipulations. *See, e.g., Pattern Criminal Jury Instructions for the Sixth Circuit* § 1.04 (2008) http://www.ca6.uscourts.gov/internet/crim__jury__insts/pdf/crmpattjur__full.pdf (last visited May 14, 2009) ("The evidence in this case includes only what the witnesses said while they were testifying under oath; the exhibits that I allowed into evidence; the stipulations that the lawyers agreed to; and the facts that I have judicially noticed."); *Pattern Criminal Jury Instructions for the Tenth Circuit* § 1.01 (2005), *available at* http://www.ck10.uscourts.gov/downloads/pji10_cir_crim.pdf (last visited May 14, 2009) ("Evidence will be presented from which you will have to determine the facts. The evidence will consist of the testimony of the witnesses, documents and other things received into the record as exhibits, and any facts about which the lawyers agree or to which they stipulate."); *Pattern Criminal Jury Instructions for the Seventh Circuit* § 1.02 (1998), *available at* http://www.ca7.uscourts.gov/pjury.pdf (last visited May 14, 2009) ("The evidence consists of the testimony of the witnesses, the exhibits admitted in evidence, and stipulations."). The Fourth Circuit, in *United States v. Muse,* 83 F.3d 672, 678 (4th Cir.1996), reinforced the assumption of these instructions with its statement that "a defendant waives the requirement that the government produce evidence (*other than the stipulation itself*) to establish the facts stipulated to beyond a reasonable doubt." (Emphasis added.)[3]

---

**1.** The concurrence also states that there is no recurring problem relating to the handling of stipulations. However, disputes regarding the handling of stipulations have arisen with some frequency in the appellate courts. *See, e.g., United States v. Harrison,* 204 F.3d 236, 238–43 (D.C.Cir.2000); *United States v. Meade,* 175 F.3d 215, 222–24 (1st Cir.1999); *United States v. Hardin,* 139 F.3d 813, 814–17 (11th Cir.1998); *United States v. Melina,* 101 F.3d 567, 572–73 (8th Cir.1996); *United States v. Muse,* 83 F.3d 672, 677–81 (4th Cir. 1996); *United States v. Branch,* 46 F.3d 440, 441–42 (5th Cir.1995); *United States v. James,* 987 F.2d 648, 648–52 (9th Cir.1993); *United States v. Clark,* 993 F.2d 402, 405–06 (4th Cir.1993).

**2.** As we have previously noted, the Pattern Criminal Jury Instructions are not mandatory in the First Circuit. *See United States v. Sabetta,* 373 F.3d 75, 82 n. 2 (1st Cir.2004).

■ The handling of Pratt's stipulation did not comply with the standard practice surrounding stipulations that we have described above,[4] and the language of the stipulation offers no indication that the parties intended to depart from this standard practice. In full, the stipulation reads as follows:

The United States and the defendant stipulate to the following facts, which the parties agree can be proved beyond a reasonable doubt:

1. That the .375 caliber Glock Semiautomatic Pistol Serial # EWU023US, which was manufactured in Austria, had been transported in interstate or foreign commerce, and that it is a "firearm" for purposes of 18 U.S.C. § 921(a)(3).

2. That Mr. Pratt was convicted of the following crimes:

A. On September 12, 1986, the defendant was convicted in Hillsborough County Superior Court of Armed Robbery [under N.H.Rev.Stat. Ann. § 636:1].

B. On January 9, 1995, the defendant was convicted in Hillsborough Superior Court of Accomplice to Armed Robbery [under N.H.Rev.Stat. Ann. §§ 629:1, 636:1].

C. On 21, 1988, the defendant was convicted in Merrimack County Superior Court of Assault by a Prisoner [under N.H.Rev.Stat. Ann. § 642:9].

D. On June 15, 1990, the defendant was convicted in Carroll County Superior Court of Burglary [under N.H.Rev. Stat. Ann. § 635:1].

E. On April 5, 1990, the defendant was convicted in Hillsborough County Superior Court of Escape [under N.H.Rev. Stat. Ann. § 642:6].

which are all crimes punishable by imprisonment for a term exceeding one year.

The parties further stipulate that the jury should be instructed by the Court that "the defendant agrees he was previously convicted of a crime punishable by imprisonment for a term exceeding one year" without further elaboration or explanation.

This text indicates that the parties contemplated that the judge would read the appropriate portions of the stipulation to the jury at a mutually agreeable time.[5]

---

3. *Muse* is not entirely on point because the stipulation to two essential elements of the charged offense *was* read to the jury, and the issue was whether the jury instructions properly conveyed the evidentiary force of the stipulation. *Muse*, 83 F.3d at 678. However, the case does reflect the prevalent understanding that a stipulation should be introduced into evidence.

4. To the extent that some of the other circuits have held that, by stipulating, a defendant waives his right to have the government enter the content of the stipulation into evidence, they are at odds with the prevalent understanding of how a stipulation should be handled. *See Hardin*, 139 F.3d at 816 ("Hardin waived his right to have the government produce evidence of his felon status, including the stipulation itself."); *Harrison*, 204 F.3d at 242; ("[T]here is little to be gained from holding that a stipulation, which unarguably waives a defendant's right to require the government to produce any evidence regarding that stipulation, nevertheless fails to waive the defendant's right to require that stipulation to be read to the jury.").

5. The brief conversation regarding the stipulation between the prosecutor and the court, which took place prior to the swearing in of the jury, supports this understanding:

Prosecutor: Judge, the United States would like to file a stipulation between the parties as to certain elements of the crime. It's been executed by the defendant, his counsel, and the United States.

The Court: All right, at the appropriate time do you expect me to read it or would you like to read it ... it's up to you....

■ Given the agreement that the jury should be told that Pratt had a prior felony conviction "without further elaboration or explanation," the parties did not intend for the stipulation itself to be introduced into evidence. Indeed, part of the motivation for the stipulation on the part of the defense was to prevent detailed evidence of Pratt's criminal history from coming before the jury. Thus, the stipulation reveals an understanding that the judge would present the material regarding the interstate commerce element and the prior conviction element to the jury as evidence on those elements, with the further understanding, as the stipulation states, that the facts set forth in the stipulation "can be proved beyond a reasonable doubt." We do not interpret the statement that "the jury should be instructed" regarding the prior convictions to mean that the parties agreed that this information should have been conveyed during the jury instructions, *after* the close of evidence, contrary to the usual practice. Instead, "instructed" just means that the court should explain to the jury at the appropriate time that the defendant was previously convicted of a felony. That appropriate time would be at some point during the presentation of evidence to the jury. However, the judge did not read the agreed-upon portion of the stipulation to the jury during the presentation of evidence, conveying the requisite material to the jury only in the jury instructions, following the close of evidence. Jury instructions themselves are not evidence, and so, again, this omission was an error, albeit a technical one.[6]

Ultimately, however, this technical error does not remotely warrant reversal of Pratt's conviction. As noted, the particularly stringent form of plain error review we apply to an unpreserved challenge to the sufficiency of the evidence asks whether the conviction resulted in a "clear and gross injustice." *Bello–Perez*, 977 F.2d at 668. Because Pratt had in fact conceded the elements addressed by the stipulation, no such injustice occurred here. Consequently, we reject Pratt's claim of plain error.

## B. Pratt's Sentence as an Armed Career Criminal

■ Pratt also challenges his sentence as an armed career criminal. Under the ACCA, a person convicted of being a felon in possession of a firearm who also has "three previous convictions ... for a violent felony" receives a mandatory minimum fifteen-year term of imprisonment. 18 U.S.C. § 924(e). Pratt claims that the government failed to establish three such convictions. Whether a crime qualifies as a violent felony for sentencing purposes is a legal question that we review de novo. *United States v. Mastera*, 435 F.3d 56, 59 (1st Cir.2006).

■ The ACCA defines "violent felony" as any crime punishable by imprisonment for a term exceeding one year that "(i) has as an element the use, attempted

Prosecutor: There's references to the conviction, judge. The very last part of the stipulation is the agreement as to what you should read to them. I don't think it's necessary to read it to them at this point in the case.

Defense counsel was silent during this interaction.

6. The concurrence suggests that we have manufactured unnecessary law in this opin-

ion. We respectfully disagree. Our holding is simply a reminder to the trial courts of some well-established propositions—namely, that stipulations are evidence, jury instructions are not, and a stipulation should be presented to the jury, in whatever manner the parties and the courts agree to, prior to the close of evidence. We doubt that the trial courts, or the litigants, will feel unduly burdened by these reminders.

use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another ..." 18 U.S.C. 924(e)(2)(B). We employ a "categorical approach" to determine whether a prior conviction that does not have as an element the use of force and is not specifically enumerated in the ACCA's definition is nonetheless a "violent felony" because it falls under the definition's "otherwise" clause. *Begay v. United States,* — U.S. ——, 128 S.Ct. 1581, 1584, 170 L.Ed.2d 490 (2008); *Taylor v. United States,* 495 U.S. 575, 602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990); *United States v. Giggey,* 551 F.3d 27, 38 (1st Cir.2008). This approach requires us to look at the category of crimes to which the prior conviction belongs to determine whether a crime in that category generally "presents a serious potential risk of physical injury." In other words, "we consider whether the *elements of the offense* are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of the particular offender." *James v. United States,* 550 U.S. 192, 202, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007).

Recently, in *Begay,* 128 S.Ct. at 1585, the Supreme Court added another layer to this categorical approach to determining whether a crime fits under the "otherwise" clause, explaining that the category of crime in question must be "roughly similar, in kind as well as in degree of risk posed" to the crimes specifically enumerated in § 924(e)'s definition (burglary, arson, extortion, or crimes involving the use of explosives). *See* 18 U.S.C. § 924(e)(2)(B)(ii). Thus, the Court held in

*Begay* that driving while intoxicated is not a crime of violence even though it presents a serious potential risk of physical injury because, unlike § 924's specifically enumerated crimes, it does not typically involve "purposeful, violent, and aggressive conduct." 128 S.Ct. at 1586 (internal quotation marks and citation omitted).

As noted, Pratt stipulated before trial that he had been convicted of the following five offenses under New Hampshire law: (1) armed robbery; (2) accomplice to armed robbery; (3) assault by a prisoner; (4) burglary; and (5) escape from prison. On appeal, he conceded that armed robbery and assault by a prisoner are violent felonies for purposes of § 924(e), but disputed that the other three convictions were ACCA predicate offenses. Only three prior violent felony convictions are necessary to qualify a defendant for the ACCA's minimum sentence, 18 U.S.C. § 924(e); therefore, if we find that just one of the disputed prior convictions was such an offense, we need go no further.

In our first pass at this case, we determined that Pratt's escape conviction was a violent felony on the basis of our earlier decision in *Winn,* 364 F.3d at 12, where we had employed the categorical approach to conclude that New Hampshire criminal escape is always a crime of violence under the "otherwise clause" of the Career Offender Guideline provision, U.S.S.G. § 4B1.2, which is analogous to 18 U.S.C. § 924(e)(2)(B).[7] Under New Hampshire law, criminal escape includes both escape from secure custody (for example, the classic "jailbreak" scenario) as well as failures to report to be taken into custody. N.H.Rev.Stat. §§ 642:6, 651:24. Winn had

---

**7.** The definition of "crime of violence" under the Career Offender Guideline is almost identical to the definition of "violent felony" under the ACCA; therefore, "cases construing one such term should be considered instructive with respect to the scope of the other." *United States v. Richards,* 456 F.3d 260, 263 n. 2 (1st Cir.2006).

been convicted of the latter because he had failed to return to a halfway house after being granted some time away from the facility. *Winn,* 364 F.3d at 8. He argued that the New Hampshire statute, which makes escape a class A felony if the offender "employs force against any person or threatens any person with a deadly weapon to effect the escape" and classifies all other escapes as class B felonies, N.H.Rev.Stat. § 642:6, had already divided violent from non-violent escapes and that his class B offense should therefore not be considered a violent felony.[8] In taking this position, Winn contended that the "powder keg" rationale adopted by other circuits[9] to treat all escape offenses as crimes of violence "unjustifiably ignores the category of genuinely passive, non-violent walk-away escapes or failures to return, which he suggest[ed] present no greater risk of violence than any other arrest of a non-violent offender." *Winn,* 364 F.3d at 11.

We disagreed, concluding that all escape crimes, including Winn's failure to report, are crimes of violence under the Career Offender Guideline.

> The formal categorical approach forecloses the conclusion that a Class B

felony escape under N.H.Rev.Stat. 642:6 does not present a serious potential risk of physical injury to another. The New Hampshire statute, while distinguishing escapes effected by force or with a deadly weapon, does not distinguish among types of confinement. The Class B felony, thus, covers a category of escapes that includes both Winn's failure to return from a break at a halfway house and the prisoner who manages to break out of jail by stealth ... We agree with our sister circuits that "even in a case where a defendant escapes from a jail by stealth and injures no one in the process, there is still a serious potential risk that injury will result when officers find the defendant and attempt to place him in custody."

*Id.* at 12 (quoting *Gosling,* 39 F.3d at 1142).

Recently, however, in *Chambers,* 129 S.Ct. at 691, the Supreme Court ruled that failures to report and escapes from custody, although sometimes grouped together within a single criminal statute, do not belong to the same category of crimes for purposes of the ACCA "violent felony" determination. Like Winn, the defendant in

---

8.   The New Hampshire statute, N.H.Rev.Stat. § 642:6 states that "[a] person is guilty of an offense if he escapes from official custody. The offense is a class A felony if the actor employs force against any person or threatens any person with a deadly weapon to effect the escape.... Otherwise it is a class B felony." A separate New Hampshire statute brings failures to report within the scope of § 642:6, stating that a person "who willfully fails to report as ordered shall be deemed to have escaped" and shall be punished as if he escaped from the institution to which he was sentenced. N.H.Rev.Stat. § 651:24.

9.   Appellate courts, including this one, have often quoted the Tenth Circuit's opinion in *United States v. Gosling,* 39 F.3d 1140 (10th Cir.1994), to describe this "powder keg" rationale:

> [E]very escape scenario is a powder keg, which may or may not explode into violence and result in physical injury to someone at any given time, but which always has the serious *potential* to do so. A defendant who escapes from jail is likely to possess a variety of supercharged emotions, and in evading those trying to recapture him, may feel threatened by police officers, ordinary citizens, or even fellow escapees. Consequently, violence could erupt at any time. Indeed, even in a case where a defendant escapes from a jail by stealth and injures no one in the process, there is still a serious potential risk that injury will result when officers find the defendant and attempt to place him in custody.
>
> *Id.* at 1142 (citation omitted).

*Chambers* had been convicted of a failure to report crime (he failed to report to a penal institution for weekend confinement after being sentenced to eleven weekends of incarceration), which he argued should not be counted as "violent" for sentencing purposes. *Id.* at 690. The Court agreed:

> Unlike the lower courts, we believe that a failure to report ... is a separate crime, different from escape ..., and from the potentially less serious failure to abide by the terms of home confinement ... The behavior that likely underlies a failure to report would seem less likely to involve a risk of physical harm than the less passive, more aggressive behavior underlying an escape from custody.

*Id.* at 691. The Supreme Court added that failure to report is not a violent felony because it does not have " 'as an element the use, attempted use, or threatened use of physical force against the person of another' ... [a]nd, more critically for present purposes, it does not 'involve conduct that presents a serious potential risk of physical injury to another.' " *Id.* at 691 (quoting 18 U.S.C. § 924(e)(2)(B)).

To assist its analysis, the Court examined recent United States Sentencing Commission data on escapes to determine whether a failure-to-report offender "is significantly more likely than others to attack, or physically to resist, an apprehender, thereby producing a 'serious potential risk of physical injury.' " *Id.* at 692 (quoting § 924(e)(2)(B)(ii)). The data provided a "conclusive, negative answer" to that question. *Id.* Of the 160 failure-to-report crimes identified by the Sentencing Commission in its Report on Federal Escape Offenses in Fiscal Years 2006 and 2007 (published in November 2008), none had involved violence during commission of the offense or during the offender's later apprehension.

■■■■ *Chambers*'s pronouncement that failure-to-report crimes should not be grouped with escape-from-custody crimes for purposes of the ACCA eroded our holding in *Winn* that all escape crimes should be treated equally under *Taylor*'s categorical approach to analyzing predicate crimes. We must now identify the category of escape crimes applicable to Pratt's conviction, and determine whether crimes in that category should be considered ACCA predicate "violent felonies." Under *Taylor,* 495 U.S. at 602, 110 S.Ct. 2143, and *Shepard v. United States,* 544 U.S. 13, 26, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), we may only gather information about Pratt's offense from a restricted universe of documents. We may look to the statutory elements of his offense, charging documents, jury instructions (not applicable here), the terms of his plea agreement, the transcript of his plea colloquy, "or to some comparable judicial record of this information." *Shepard,* 544 U.S. at 26, 125 S.Ct. 1254. By contrast, we may not look to police reports to find relevant information about Pratt's offense. *Id.* at 16, 125 S.Ct. 1254.

■■■■ Pratt's indictment reveals that his was not a failure-to-report crime but actually an escape from secure custody.[10] The

---

10. By "secure custody," we refer to custody in which a person is constrained by a secure perimeter, in the custody of an armed guard, or otherwise physically restrained from departing an area. *Cf.* U.S.S.G. § 2P1.1 cmt. n. 1 (" 'Non-secure custody' means custody with no significant physical restraint (e.g., where a defendant walked away from a work detail outside the security perimeter of an institution; where a defendant failed to return to any institution from a pass or unescorted furlough; or where a defendant escaped from an institution with no physical perimeter barrier.")). This case does not require us to evaluate the status, for ACCA and Career Offender purposes, of so-called "walkaway" escapes, in

indictment charges that he "purposely escape[d] from official custody at the Hillsborough County Jail ... by crawling under a fence and leaving the area." Like burglary, a crime specifically enumerated in § 924(e), escape from secure custody is a stealth crime that is likely to cause an eruption of violence if and when it is detected. Therefore, the "powder keg" rationale still applies to such a crime. Furthermore, escape from secure custody also passes the test articulated in *Begay* because the "less passive, more aggressive" conduct involved in an escape from custody, *Chambers*, 129 S.Ct. at 691, is "roughly similar, in kind as well as in degree of risk posed" to the crimes enumerated in the definition of violent felony (burglary, arson, extortion, and crimes involving explosives). *Begay*, 128 S.Ct. at 1585. For these reasons, we hold that escape from secure custody is a violent felony within the meaning of the ACCA.

We are not the only circuit to have reached the conclusion that escapes from secure custody qualify as violent felonies regardless of whether failures to report so qualify. For example, in *Templeton*, 543 F.3d at 382, 384, a panel of the Seventh Circuit analyzed Department of Justice and academic data on the crime of escape from secure custody and concluded that such escapes "generate a sufficient risk of injury to count as crimes of violence," and "involve the sort of active and aggressive conduct that *Begay* requires." *See also*

*United States v. Chambers*, 473 F.3d 724, 725 (7th Cir.2007), *rev'd*, — U.S. —, 129 S.Ct. 687, 172 L.Ed.2d 484 (a jailbreak-type escape unquestionably "presents a serious potential risk of physical injury to another"); *United States v. Pearson*, 553 F.3d 1183, 1186 (8th Cir.2009) (describing escape offenses as "career-offender-qualifying escape[s] from custody" as opposed to "non-qualifying failure[s] to return or report to custody"); *United States v. Collier*, 493 F.3d 731, 734 (6th Cir.2007) (holding that "a jailbreak certainly deserves categorical treatment as a 'violent felony,'" but expressing doubt that failure to report is a crime of violence); *United States v. Piccolo*, 441 F.3d 1084, 1089 (9th Cir.2006) ("While an escapee who flees a secured facility or the custody of an armed guard presents a serious risk of injury to himself and others, the same cannot be said for an escapee who leaves a halfway house with permission and fails to return."); *cf. United States v. Adkins*, 196 F.3d 1112, 1119 (10th Cir.1999) (McKay, J., concurring) ("There is a quantum difference between the assumptions about the intrinsic danger of unauthorized departure from actual custody ... and of failure to return from authorized departure from actual custody.").

We therefore conclude that Pratt's escape from secure custody, by crawling under a fence at a county jail, was a "violent felony" within the meaning of the ACCA. Pratt stipulated to two other offenses that

which persons in non-secure custody simply walk away from a location where they are supposed to remain. *See, e.g., United States v. Parks*, 561 F.3d 795, 797 (8th Cir.2009) (per curiam) (reevaluating, in light of *Chambers*, the question whether a walkaway escape conviction for "absconding, without violence, from an honor center" constitutes a crime of violence); *United States v. Ford*, 560 F.3d 420, 426 (6th Cir.2009) (determining that walkaway escapes are not crimes of violence in the wake of *Chambers*, in abrogation of the cir-

cuit's pre-*Chambers* position); *United States v. Templeton*, 543 F.3d 378, 382 (7th Cir.2008) (indicating that "a prisoner's walkaway from a halfway house or a camp that lacks fences" is a kind of escape that does not "depend on aggression"). Therefore, we focus only on the more limited question whether an escape from secure custody, such as that committed by Pratt when he crawled under a fence at a jail, falls within the "otherwise" clause of the ACCA.

he does not dispute were violent felonies: armed robbery and assault by a prisoner. It therefore follows that he had the requisite three prior violent felony convictions to qualify for the ACCA's mandatory minimum sentence. Accordingly, we need not consider Pratt's arguments about whether the remaining two stipulated offenses were also crimes of violence.[11]

### III.

For the foregoing reasons, we *affirm* Pratt's conviction and sentence.

*So ordered.*

BOUDIN, Chief Judge, concurring in the judgment.

No single ritual has been prescribed for advising the jury that a factual issue has been stipulated to by the parties. In some cases a written stipulation is introduced; in others, the jury is merely informed; and no fixed rule exists as to timing. Surely if the parties are content and the pertinent information is conveyed, this is a matter that should be left to the informed discretion of the district judge.

The parties in this case agreed that the defendant had a prior felony conviction and the gun had moved in interstate commerce. They signed and filed a stipulation to this effect listing the specific felonies. The government in opening argument told the jury as to what had been stipulated, without identifying the three specific felonies—an omission helpful to the defendant.

In the instructions, the judge repeated the substance to the jury.

The defendant did not object either to the opening statement or the court's handling of the matter at the instruction stage and even on appeal cannot explain how he was disadvantaged by the procedure followed, arguing instead that there was "no evidence" as to the stipulated facts. Of course, the point of a stipulation is to avoid the need to present evidence of an uncontested fact.

Merely to read the panel opinion is to confirm that no settled rule exists as to how the jury is to be informed of a stipulation. And, in the absence of a governing rule or some prejudicial action, what the district judge did was assuredly not "error." Nor is there any indication of any "standard practice"—whatever this may mean—or that the district judge departed from what the parties intended.

If a recurring problem were presented as to handling of stipulations, it might be acceptable to say that—though there was no error—the matter ought in the future to be handled in a different way. But no such problem exists. Manufacturing more unnecessary "law," of which there is already no shortage, merely creates new traps for trial judges and litigants who are trying to get their jobs done under pressures far exceeding our own.

---

11. Pratt also asserts that his sentencing was in violation of the Fifth and Sixth Amendments because the indictment did not charge, he did not admit, and a jury did not find that his prior convictions qualified as predicate offenses under the ACCA. The Supreme Court rejected this argument in *Almendarez–Torres v. United States*, 523 U.S. 224, 239, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), and *Apprendi v. New Jersey*, 530 U.S. 466, 489–90, 120 S.Ct.

2348, 147 L.Ed.2d 435 (2000), but Pratt argues that a majority of the Supreme Court is now poised to overrule its prior holding. As he acknowledges, however, we have rejected this argument on numerous occasions. *See, e.g., United States v. McKenney*, 450 F.3d 39, 45–46 (1st Cir.2006); *United States v. Moore*, 286 F.3d 47, 51 (1st Cir.2002). Thus, we need not give it further consideration here.