# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 09-2277

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| James Gene Furqueron, | * | |
| | * | |
| Appellant. | * | |

———————

Submitted: March 12, 2010
Filed: May 24, 2010

———————

Before RILEY, Chief Judge,[1] BRIGHT and WOLLMAN, Circuit Judges.

———————

WOLLMAN, Circuit Judge.

James Gene Furqueron pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). The district court determined that Furqueron was subject to an enhanced sentence under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1), and the related section of the United States Sentencing Guidelines (USSG), § 4B1.4, after finding that he had three prior convictions for violent felonies. Furqueron appeals from his sentence, contending that his convictions for fleeing a peace officer in a motor vehicle, in

———————

[1]The Honorable William Jay Riley became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 1, 2010.

violation of Minnesota Statutes § 609.487 subdivision 3 (2006), and escape from custody, in violation of Minnesota Statutes § 609.485 subdivisions 2(1) and 4(1) (1988), do not constitute violent felonies. We reverse and remand.

I.

Furqueron's presentence investigation report listed a litany of prior convictions, including three it identified as violent felonies under the ACCA: fleeing a peace officer in a motor vehicle, escape from custody, and second-degree attempted homicide. The report determined that Furqueron was subject to the ACCA's fifteen-year mandatory minimum sentence. The report calculated Furqueron's base offense level and criminal history category under the USSG's armed career criminal section, § 4B1.4, and concluded that the sentencing range was 180 to 188 months' imprisonment. Furqueron objected to the report's determination that he had three predicate offenses under the ACCA, conceding only that the second-degree attempted homicide conviction was a violent felony.

The district court adopted the presentence investigation report's findings, ruled that Furqueron was subject to the ACCA's enhanced sentence because his convictions for fleeing and escape constituted violent felonies, and sentenced Furqueron to fifteen years' imprisonment.

II.

The ACCA mandates a minimum fifteen-year term of imprisonment for a defendant who has been convicted of being a felon in possession of a firearm and who previously has been convicted of three violent felonies. 18 U.S.C. § 924 (e)(1). We recently held that the crime of fleeing a peace officer in a motor vehicle, in violation of Minnesota Statutes § 609.487 subdivision 3, does not constitute a crime of violence under the sentencing guidelines. United States v. Tyler, 580 F.3d 722, 726 (8th Cir.

2009). We recognize the term "violent felony" under the ACCA as synonymous with the term "crime of violence" under § 4B1.2. United States v. Williams, 537 F.3d 969, 971 (8th Cir. 2008) (noting that the relevant definitions of the two terms are "virtually identical"). Furqueron's conviction for fleeing a peace officer in a motor vehicle thus cannot serve as a basis for a sentence under the ACCA or USSG § 4B1.4.

This holding removes Furqueron from the armed career criminal classification because he has been convicted of at most two violent felonies. Whether Furqueron's escape conviction is a violent felony, or in sentencing guidelines parlance, a crime of violence, remains justiciable. See United States v. Clinkscale, 559 F.3d 815, 817 (8th Cir. 2009) (concluding that the defendant was not an armed career criminal because his motor vehicle theft conviction was not a violent felony and deciding the issue whether his terroristic threats conviction constituted a crime of violence). If Furqueron's felony escape conviction is a crime of violence, he is subject to a higher base offense level on remand than if he has only one predicate conviction.[2] The same analysis applies to determine whether a conviction constitutes a violent felony under the ACCA as applies to determine whether it is a crime of violence under the USSG, see Williams, 537 F.3d at 971, and the parties have fully briefed the issue whether Furqueron's escape conviction constitutes a violent felony. We thus reach the merits of Furqueron's argument.

---

[2]Section 2K2.1(a)(2) assigns a base offense level of twenty-four to a defendant who committed the charged offense "subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." Section 2K2.1(a)(4) assigns a base offense level of twenty to a defendant with only one previous felony conviction for a crime of violence.

III.

Section 4B1.2(a) of the USSG defines a crime of violence as any offense punishable by imprisonment for a term exceeding one year, that "(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." To determine whether a defendant's prior conviction falls within the "otherwise" clause, "we must consider whether it poses a similar degree of risk of physical injury and whether it typically involves conduct that is similarly purposeful, violent and aggressive when compared to the conduct involved in its closest analogue among the example crimes." United States v. Gordon, 557 F.3d 623, 625 (8th Cir. 2009) (emphasis omitted) (citing Begay v. United States, 553 U.S. 137 (2008)).

In conducting the analysis, we apply a categorical approach, looking to the elements of the offense to determine whether the conviction constitutes a crime of violence. Id. If the statute is overinclusive, covering offenses that would constitute crimes of violence, as well as offenses that would not, we apply a modified categorical approach, which allows a court to "refer to the charging document, the terms of a plea agreement, jury instructions, or comparable judicial records to determine" whether the prior conviction is a crime of violence. United States v. Pearson, 553 F.3d 1183, 1186 (8th Cir. 2009).

Furqueron was convicted of escape from custody, in violation of Minnesota Statutes 609.485 subdivision 2(1) (1988), which prohibits "[e]scapes while held in lawful custody on a charge or conviction of a crime." He was sentenced under subdivision 4(1), which provides a term of imprisonment of not more than five years and a fine of not more than $10,000 "[i]f the person who escapes is in lawful custody on a charge or conviction of a felony." The statute defines "escape" as including

"departure without lawful authority and failure to return to custody following temporary leave granted for a specific purpose or limited period." Id. subd. 1. The Minnesota statute thus criminalizes conduct ranging from a jail break to failing to return to custody after furlough.

In Chambers v. United States, 129 S. Ct. 687 (2009), the Supreme Court held that a conviction for failure to report to a penal institution was not a violent felony under the ACCA. We have recognized that Chambers "overrule[d] our precedent that all escape offenses are crimes of violence, including failures to return or report to custody" but "[left] intact our precedent holding that escape from penal custody is a crime of violence." United States v. Hudson, 577 F.3d 883, 886 (8th Cir. 2009); see Pearson, 553 F.3d at 1186 (remanding for a determination of whether the escape conviction "was a career-offender-qualifying escape from custody or a non-qualifying failure to return or report to custody"). The Minnesota escape statute criminalizes multiple offenses, including escapes that no longer constitute crimes of violence. E.g., State v. Beito, 332 N.W.2d 645, 648 (Minn. 1983) (failure to return from work release); Headbird v. State, 375 N.W.2d 90, 92 (Minn. Ct. App. 1985) (failure to report to halfway house after treatment program while on furlough); State v. L'Italien, 363 N.W.2d 490, 492 (Minn. Ct. App. 1985) (failure to return from furlough). Accordingly, the statute is overinclusive, and Furqueron's conviction is subject to analysis under the modified categorical approach.

Although the charging document is not in the record, Furqueron does not challenge the summary thereof set forth in the presentence investigation report: Furqueron escaped from a county jail by exiting a security door that was ajar and that should have been closed. See United States v. Clark, 563 F.3d 771, 773 (8th Cir. 2009) (concluding that the district court properly relied on undisputed facts in the presentence investigation report in applying the modified categorical approach). Furqueron thus escaped from the secure custody of a penal institution, an offense that remains a crime of violence after Chambers.

Furqueron contends that his escape was a "walkaway" escape and as such does not constitute a crime of violence. See United States v. Lee, 586 F.3d 859, 874 (11th Cir. 2009) (holding that a nonviolent walkaway escape from halfway house does not constitute a violent felony); United States v. Ford, 560 F.3d 420, 425-26 (6th Cir. 2009) (holding that leaving custody in a non-secured setting by walking away is not a crime of violence); United States v. Templeton, 543 F.3d 378, 382-83 (7th Cir. 2008) (noting that a "prisoner's walkaway from a halfway house or a camp that lacks fences" is a form of escape and holding that a walkaway is not a crime of violence). See generally United States v. Jackson, 594 F.3d 1027, 1029-30 n.2 (8th Cir. 2010) (recognizing that the Eighth Circuit has not yet determined whether a walkaway escape qualifies as a crime of violence in light of Chambers and Begay). Furqueron's offense, however, was not a walkaway escape from a halfway house or some other non-secured setting. Rather, he escaped from a county jail by taking advantage of a security breach.

Furqueron's escape conviction is roughly similar to burglary, posing a similar degree of risk of physical injury and involving purposeful, aggressive conduct. Like burglary, escape from a secured setting is "a stealth crime that is likely to cause an eruption of violence if and when it is detected." United States v. Pratt, 568 F.3d 11, 22 (1st Cir. 2009). "The main risk of burglary arises not from the simple physical act of wrongfully entering onto another's property, but rather from the possibility of a face-to-face confrontation between the burglar and a third party." James v. United States, 550 U.S. 192, 203 (2007) (holding that attempted burglary under Florida law is a violent felony). Similarly, the main risk of escape from a penal institution arises not from leaving custody, but from the possibility of being discovered in the act of escaping. Furqueron's escape conviction also involved the "more aggressive behavior" of escape from custody, not the passive behavior involved in failing to report. Chambers, 129 S. Ct. at 691 ("The behavior that likely underlies a failure to report would seem less likely to involve a risk of physical harm than the less passive,

more aggressive behavior underlying an escape from custody."); see also Pratt, 568 F.3d at 22 (holding that the defendant's escape from a county jail "by crawling under a fence and leaving the area" constituted a violent felony within the meaning of the ACCA). Applying the modified categorical approach, we hold that Furqueron's conviction for escape from a penal institution, in violation of Minnesota Statutes 609.485 subdivisions 2(1) and 4(1) (1988), constitutes a crime of violence for purposes of the sentencing guidelines.

Conclusion

Furqueron's sentence is vacated and the case is remanded to the district court for resentencing.

RILEY, Chief Judge, concurring.

I concur because United States v. Tyler, 580 F.3d 722, 726 (8th Cir. 2009) and our prior precedent rule compel reversal. See Drake v. Scott, 812 F.2d 395, 400 (8th Cir. 1987) ("One panel of this Court is not at liberty to disregard a precedent handed down by another panel.").

In my view, Tyler was wrongly decided because fleeing a peace officer in a motor vehicle, Minn. Stat. § 609.487(3), involves the purposeful, violent, and aggressive conduct discussed in Begay v. United States, 553 U.S. 137, 144-45 (2008) (contrasting crimes involving purposeful, violent, and aggressive conduct from crimes such as drunk driving, which are more comparable to "crimes that impose strict liability, criminalizing conduct in respect to which the offender need not have any criminal intent at all") and Chambers v. United States, 555 U.S. ___, ___, 129 S. Ct. 687, 692 (2009) (addressing passive crimes such as failing to report or return to law enforcement custody and saying, "While an offender who fails to report must of course be doing *something* at the relevant time, there is no reason to believe that the

*something* poses a serious potential risk of physical injury."). Fleeing a peace officer in a motor vehicle shadows the "more aggressive behavior" of escape from custody. See Chambers, 129 S. Ct. at 691 ("The behavior that likely underlies a failure to report would seem less likely to involve a risk of physical harm than the less passive, more aggressive behavior underlying an escape from custody."). Before Tyler, we implicitly recognized the purposeful, violent, and aggressive nature of fleeing a peace officer in a motor vehicle. See, e.g., United States v. Kendrick, 423 F.3d 803, 809 (8th Cir. 2005) ("[U]nder the stress and urgency which will naturally attend his situation, a person fleeing law enforcement will likely drive recklessly and turn any pursuit into a high-speed chase with the potential for serious harm to police or innocent bystanders.") (internal marks omitted). That is why nearly every circuit court of appeals to consider similarly worded statutes disagrees with Tyler. See United States v. Dismuke, 593 F.3d 582, 588-97 & nn.3 & 7 (7th Cir. 2010) (holding Wisconsin's vehicular-fleeing offense, Wis. Stat. § 346.04(3), qualified as a violent felony after collecting cases from the Fifth, Sixth, Seventh, Tenth, and Eleventh Circuits, and declaring "our conclusion here . . . actually parts company with just one circuit, the Eighth, in Tyler, 580 F.3d at 726"). Cf. United States v. Harrison, 558 F.3d 1280, 1290-1301 (11th Cir. 2009) (finding Florida's willful fleeing statute is not a violent felony based upon the specific facts of the case).

The en banc court may wish to bring our precedent back in line with the Supreme Court and our sister circuits. See, e.g., Owens v. Miller (In re Miller), 276 F.3d 424, 428-29 (8th Cir. 2002) ("'As an appellate court, we strive to maintain uniformity in the law among the circuits, wherever reasoned analysis will allow, thus avoiding unnecessary burdens on the Supreme Court docket.'" (quoting United States v. Auginash, 266 F.3d 781, 784 (8th Cir. 2001))).

BRIGHT, Circuit Judge, concurring.

I concur in the fine opinion of Judge Wollman, and I disagree with my respected colleague Chief Judge Riley that this court wrongly decided *Tyler*.

I recognize that we generally do not look at the specific facts of a prior conviction when deciding whether it qualifies as a crime of violence. *See Tyler*, 580 F.3d at 725. But I write separately to express that when sentencing Furqueron on remand, the district court may consider under 18 U.S.C. § 3553(a) whether Furqueron's escape from a county jail posed an actual threat of violence to anyone. The judge may sentence the offender below the guidelines, taking the § 3553(a) factors into account and exercising informed discretion.

_____