SARGUS, D.J., delivered the opinion of the court, in which COLE, J., joined. DONALD, J. (pp. 710-16), delivered a separate dissenting opinion.
OPINION
EDMUND A. SARGUS, District Judge.
Benji Stout pleaded guilty to knowingly possessing body armor after having been previously convicted of a crime of violence, in violation of 18 U.S.C. § 931(a)(2). Stout now appeals, contending that the district court erred when it found that his prior state-law conviction for second-degree escape constituted a “crime of violence,” as defined by 18 U.S.C. § 16. For the following reasons, we AFFIRM the decision of the district court.
I.
On August 4, 2009, officers from the Winchester, Kentucky Police Department stopped Stout’s vehicle. The officers discovered four pieces of body armor in the vehicle, which Stout admittedly possessed. The body armor had been manufactured by American Body Armor in Jacksonville, Florida and sold in interstate commerce prior to Stout’s possession.
A grand jury returned an indictment charging Stout with one count of being a felon-in-possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and one count of knowingly possessing body armor after having been previously convicted of a crime of violence in violation of 18 U.S.C. § 931(a)(2). At his arraignment, Stout requested a hearing to determine whether his prior state-law conviction for seeonddegree escape constituted a “crime of violence.”
The record below provides limited information with regard to Plaintiffs prior state-law conviction. In November 2004, Stout pleaded guilty to second-degree escape in violation of section 520.030 of the Kentucky Revised Statutes. The underlying complaint alleged that Stout committed the crime while incarcerated at the Detention Center in Lincoln County, Kentucky. According to the reporting officer, Stout “scaled the recreation area wall, cutting a hole in the fence at [the], top and escaping custody of the [j]ail.” During the evidentiary hearing, Stout, through his attorney, admitted to scaling the wall and escaping through a hole in the fence, but denied cutting the hole in the fence. The government proffered no evidence indicating that Stout was the individual who cut the hole in the fence that he used for his escape. On this basis, the district court “assume[d] that [Stout] merely used the hole to make his escape.”
The district court held that Stout’s prior state-law conviction for escape constituted a “crime of violence” for purposes of 18 U.S.C. § 16. The district court stressed that Stout had escaped from a secure facility, by scaling a fence. The district court reasoned that Stout’s actions were “purposeful and aggressive” and “created a serious risk of the use of physical force against guards and members of the general public.” After the district court’s ruling, Stout pleaded guilty to one count of knowingly possessing body armor having previously been convicted of a “crime of violence.” The government, through motion, dismissed the other remaining charge, being a convicted felon in posses *706 sion of a firearm in violation of 18 U.S.C. § 922(g)(1).
Stout’s plea agreement allowed him to appeal the district court’s ruling on the “crime of violence” issue. Accordingly, he filed a timely notice of appeal of his conviction.
II.
Stout’s appeal presents a single issue: Does his prior state-law conviction for escape constitute a “crime of violence” within the meaning of 18 U.S.C. § 16? We review the district court’s legal determination de novo. United States v. Martin, 378 F.3d 578, 580 (6th Cir.2004).
A “crime of violence” is defined as:
(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.
18 U.S.C. § 16 (2006). Our inquiry is conditionally two-fold. First, we apply the “categorical approach” to discern the nature of a defendant’s prior conviction. Taylor v. United States, 495 U.S. 575, 602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). To do so, we look to the statutory definition of the crime of conviction, not the underlying facts thereof, to determine the nature of the crime. Id.; see also Leocal v. Ashcroft, 543 U.S. 1, 7, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004) (holding that the language of 18 U.S.C. § 16 “requires us to look to the elements and the nature of the offense of conviction, rather than to the particular facts relating to petitioner’s crime”). If, however, this inquiry reveals that it is possible to violate a criminal law both in a manner that is a crime of violence and in a manner that is not, we may look at the indictment, guilty plea, and similar documents to see if they “necessarily” establish the nature of the prior offense. Shepard v. United States, 544 U.S. 13, 26, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005); see also United States v. Mendoza-Mendoza, 239 Fed.Appx. 216, 219 (6th Cir.2007) (applying Shepard within the context of 18 U.S.C. § 16).
In evaluating the residual clause of § 16(b), we recognize that the United States Sentencing Guidelines and the Armed Career Criminal Acts (“ACCA”) each contain similar residual clauses relating to crimes of violence. See U.S. Sentencing Guidelines Manual § 4B1.2 (2012) (providing that the term “crime of violence” includes a crime that “otherwise involves conduct that presents a serious potential risk of physical injury to another”); 18 U.S.C. § 924(e)(2)(B) (stating that “violent felony” includes a crime that “otherwise involves conduct that presents a serious potential risk of physical injury to another”). Although similar, the language of § 16(b) is narrower than these provisions to the extent that it explicitly requires that a crime carry a substantial risk “of physical force” during “the course of committing the offense.” 18 U.S.C. § 16(b); see also United States v. Amos, 501 F.3d 524, 527-28 (6th Cir.2007) (comparing § 16(b) to the ACCA).
III.
Pursuant to the approach outlined in Taylor and Shepard, we must first classify the offense in question. We have recognized, “[ojften the key analytical move in the case happens at the first step: deciding whether the state-law definition of the offense involves just one category or two or more categories of crimes.” United States v. Mosley, 575 F.3d 603, 606 (6th *707 Cir.2009). “The ‘categorical approach requires courts to choose the right category,’ as the Supreme Court recently clarified, and sometimes that choice requires the federal courts to draw distinctions that the state law on its face does not draw.” Id. (quoting Chambers v. United States, 555 U.S. 122, 126, 129 S.Ct. 687, 172 L.Ed.2d 484 (2009)). For example, when the same statutory section criminalizes two types of behavior that significantly differ, “a sentencing court must treat the two as different crimes.” Chambers, 555 U.S. at 126, 129 S.Ct. 687. At the same time, however, we must be “careful that the lines we draw are meaningful ones” and must not circumvent the categorical approach that Taylor requires. United States v. Ford, 560 F.3d 420, 424 (6th Cir.2009).
As detailed above, Stout’s prior state-law conviction was for escape.[1] Under Kentucky law, “escape in the first degree” is a Class C felony that arises when a person “escapes from custody or a detention facility by the use of force or threat of force against another person.” Ky.Rev. Stat. § 520.020 (2012). This was not, however, the crime of Stout’s conviction. Stout was guilty of escape in the second degree, which consists of either “eseape[ ] from a detention facility or, [while] being charged with or convicted of a felony, ... escape[] from custody.” Id. § 520.030(1).
To categorize section 520.030 of the Kentucky Revised Statutes, we need not look far. In Ford, we acknowledged that “a conviction for second-degree escape [under this provision] covers everything from a felon who breaks out of a maximum-security prison to one who fails to report at a halfway house.” 560 F.3d at 422. Because of the broad range of conduct that a, conviction for second-degree escape covers, we concluded that there were both violent and non-violent means of violating the statute. Id. at 426. Moreover, we recognized that Kentucky law divides “into at least four categories of escape: leaving custody with the use or threat of force; leaving custody in a secured setting; leaving custody in a non-secured setting by ‘walking away’; or failure to report.” Id. at 424.
In this case, the proper classification of Stout’s offense is an escape by leaving custody in a secured setting. Once again, within the relevant Shepard material, Stout admits that he scaled the recreational area wall of his detention facility and then escaped through a pre-existing hole in the fence. Such conduct falls squarely into the category of “leaving custody in a secured setting” that we recognized in Ford. Id. at 424. Specifically, in Ford, we discussed the differing nature of such conduct in comparison to walkaway escapes:
There is a difference between individuals who overcome physical barriers to freedom and those who walk off the grounds — those in other words who leave a facility without removing a physical restraint, without breaking a lock on a door, without climbing over a prison wall or security fence or without otherwise breaking through any other form of security designed to keep them put.
Id. (emphasis added).
At least within the circumstances of this case, we will not further divide the eatego *708 ries of section 520.030 of the Kentucky-Revised Statutes outlined in Ford.[2] There are various ways in which a person might escape from custody in a secured facility, with varying degrees of culpability. Nevertheless, the Court must not abandon a categorical approach. Here, the category of leaving a secured setting “describe[s] roughly similar forms of behavior” that “amount to variation on a single theme.” See Chambers, 555 U.S. at 127, 129 S.Ct. 687 (holding that although there were “various kinds of failure to report” under the relevant statute, failure to report “eonstitut[ed] a single category”).' As suggested in Ford, escapes within this category involve purposeful action to “overcome physical barriers to freedom.” 560 F.3d at 424. Additionally, as our sister circuits have recognized, escapes from secured facilities are similar in nature as they involve the use of stealth as well as the possibility of detection. See, e.g., United States v. Furqueron, 605 F.3d 612, 615 (8th Cir. 2010); United States v. Pratt, 568 F.3d 11, 22 (1st Cir.2009).
IV.
Having classified Stout’s offense, we must now determine whether it constitutes a “crime of violence.” The use or threatened use of physical force is not an element of an escape from a secured facility and, therefore, 18 U.S.C. § 16(a) does not apply. Accordingly, the question becomes whether escaping from a secured facility “by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.” 18 U.S.C. § 16(b).
As the Supreme Court has stated, “[§ 16(b) ] covers offenses that naturally involve a person acting in disregard of the risk that physical force might be used against another in committing an offense.” Leocal, 543 U.S. at 10, 125 S.Ct. 377. Moreover, giving the terms of § 16(b) their ordinary meaning, crimes of violence are “active crimes.” Id. at 11, 125 S.Ct. 377; see also Johnson v. United States, 559 U.S. 133, 130 S.Ct. 1265, 1271, 176 L.Ed.2d 1 (2010) (indicating that the term violent “connotes a substantial degree of force”). The Supreme Court has provided that burglary is the “classic example” of a crime of violence under § 16(b). Leocal, 543 U.S. at 10, 125 S.Ct. 377. In particular, “a burglary would be covered under § 16(b) not because the offense can be committed in a generally reckless way or because someone may be injured, but because burglary, by its nature, involves a substantial risk that the burglar will use force against a victim in completing the crime.” Id.
Applying these guidelines, escape from a secured facility is a crime of violence within the meaning of 18 U.S.C. § 16(b). Escape from a secured facility is an active crime, requiring intentional conduct on the part of the offender. As we implied in Ford, such escapes involve individuals overcoming physical barriers, as well as security, and are the type of “traditional escapes ... apt to lead to serious risks of physical injury.” 560 F.3d at 424. Moreover, the risk involved is not simply accidental injury, but includes the risk that the offender will use physical force against others and their property in the course of committing the offense. Leaving a secured facility comes with the clear possibil *709 ity of detection and confrontation during the course of the escape. Given the unique intensity of a jailbreak scenario, it is natural to infer a significant risk that the offender will be prone to use force against any person, or property, interfering with completion of the crime. See, e.g., Pratt, 568 F.3d at 22 (“[EJscape from secure custody is a stealth crime that is likely to cause an eruption of violence if and when it is detected.”); cf. United States v. Hughes, 602 F.3d 669, 677 (5th Cir.2010) (“[TJhe act is typically aggressive insofar as one who escapes prison is no doubt aware that armed law enforcement will seek him out, potentially ending in a violent confrontation.”). In other terms, given the serious consequences that result from capture, it is likely that many offenders will not simply give up their escape if they encounter security.
Furthermore, escape from a secure facility is similar to burglary, the classic crime of violence pursuant to § 16(b). See, e.g., United States v. Proch, 637 F.3d 1262, 1268-69 (11th Cir.2011) (concluding that escape from custody is similar to burglary); Furqueron, 605 F.3d at 615-16 (same). Both crimes involve stealth and the possibility of detection. These characteristics, combined with the serious nature of both crimes, lead to the substantial risk that the offender will resort to violence if confronted prior to the completion of the crime.
Tellingly, in light of statistical data, the Seventh Circuit has found “that escapes (other than walkaways) generate a sufficient risk of injury to count as crimes of violence.” United States v. Templeton, 543 F.3d 378, 382 (7th Cir.2008) (citing a study reflecting “that 8% of escapees commit violence against guards in the process of getting away”). We also recognize that other circuits have concluded that escape from a secured facility is a crime of violence or violent felony within similar contexts. See, e.g., Proch, 637 F.3d at 1269 (holding that escape from jail was a violent felony under the ACCA); Hughes, 602 F.3d at 676-77 (same); Pratt, 568 F.3d at 22 (“[EJscape from secure custody, by crawling under a fence at a county jail, was a ‘violent felony[1] within the meaning of the ACCA”); see also Furqueron, 605 F.3d at 616 (holding that escape from a penal institution was a crime of violence within the meaning of the sentencing guidelines).
Finally, in concluding that escape from a secured facility is a crime of violence under 18 U.S.C. § 16(b), we are not attempting to revive an expansive “powder-keg” approach. Prior to Chambers, various holdings of this and other circuits “turned on the reasoning that every escape scenario is a powder keg because [a] defendant who escapes from jail is likely to possess a variety of supercharged emotions and violence could erupt at any time.” United States v. Anglin, 601 F.3d 523, 529 (6th Cir.2010). Courts used this rationale to designate walkaway escapes as violent crimes based on the potential of what might happen if the offender was eventually caught. Id. Following Chambers and Ford, we recognized that “the powder-keg theory has little, if any, continuing persuasiveness.” Id. Our holding today is not based on broad speculation as to future events that might occur after the crime. Rather, it is based on the substantial risk that offenders who choose to escape from secured settings will engage in physical violence during the course of the escape. This is exactly the type of analysis that 18 U.S.C. § 16(b) requires.
V.
For these reasons, we AFFIRM the decision of the district court.

. Prior to the Supreme Court’s decision in Chambers, the Sixth Circuit had taken the view that all escape offenses — from failure to report at one end of the spectrum, to a breakout at the other — constituted crimes of violence. See, e.g., United States v. Bailey, 510 F.3d 562, 566 (6th Cir.2007). In Chambers, the Supreme Court held that at least one type of escape conviction under Illinois law — a “failure to report for penal confinement” — is not a "violent felony” under the ACCA. 555 U.S. at 123, 129 S.Ct. 687. Following Chambers, we held in Ford that a “walkaway” escape is not a crime of violence within the meaning of the sentencing guidelines. 560 F.3d at 426.

. This is not to say that there are no other possible divisions, outside the four categories Ford listed, of section 520.030 of the Kentucky Revised Statutes. As detailed above, however, Stout's conduct in scaling a jail wall clearly falls within the category of leaving the custody of a secured setting.

. Like the majority, I posit that the ACCA’s residual clause and section 4B1.2 of the Sentencing Guidelines should be read in pari materia. Because I have no need to draw distinctions between the two, I will refer only to the ACCA’s provisions.