*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 09a0106p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

                    *Plaintiff-Appellee,*

     *v.*

No. 08-5091

JEFFREY LYNDALE FORD,

                  *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 07-00113-001—Joseph M. Hood, District Judge.

Submitted: January 14, 2009

Decided and Filed: March 18, 2009

Before: MERRITT, COLE and SUTTON, Circuit Judges.

_____

**COUNSEL**

**ON BRIEF:** Andrew Martin Stephens, ANDREW M. STEPHENS & ASSOCIATES, Lexington, Kentucky, for Appellant. Charles P. Wisdom, Jr., Robert M. Duncan, Jr., ASSISTANT UNITED STATES ATTORNEYS, Lexington, Kentucky, for Appellee.

_____

**OPINION**

_____

SUTTON, Circuit Judge. Jeffrey Ford challenges his sentence for bank robbery, arguing that the district court improperly sentenced him as a career offender under § 4B1.1(a) of the sentencing guidelines. Because his previous conviction for a "walkaway" escape is not a "crime of violence" under this provision of the guidelines, we reverse and remand for resentencing.

1

I.

In 2007, Ford pleaded guilty to bank robbery.  *See* 18 U.S.C. § 2113(a).  The district court calculated an advisory guidelines range of 151 to 188 months, *see* U.S.S.G. ch. 5, pt. A, and sentenced Ford to 151 months.  His offense level included a 10-point career-offender enhancement based on his present bank-robbery conviction and prior state-law convictions for robbery and second-degree escape.  *See id.* § 4B1.1(a).

II.

Ford's appeal presents one issue:  Does his prior conviction for escape constitute a "crime of violence"?

Some of this ground is well-plowed.  A defendant is a career offender, as pertinent here, if he was at least 18 when he committed the offense, the offense is a felony "crime of violence" and he has been convicted of at least two prior felony "crime[s] of violence."  *Id.* § 4B1.1(a).  A "crime of violence" is an offense that warrants at least a year in prison and that "(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."  *Id.* § 4B1.2(a).

Acknowledging that his robbery convictions—his present one and his earlier one—amount to crimes of violence, Ford argues that his second-degree-escape conviction does not.  That type of conviction, everyone agrees, does not contain a use-of-force element, and it is not a burglary-of-a-dwelling, arson, extortion or use-of-explosives offense.  That leaves the possibility that the offense "otherwise involves conduct that presents a serious potential risk of physical injury to another."  *Id.*  Two inquiries guide our application of the residual clause.  One, does the crime present a serious potential risk of violence akin to the listed crimes?  *See James v. United States*, 550 U.S. 192, 127 S. Ct. 1586, 1594–98 (2007).  Two, does the crime involve the same kind of "purposeful, violent, and aggressive conduct" as the listed crimes?  *Begay v. United States*, __U.S.__, 128 S. Ct. 1581, 1586 (2008); *see also Chambers v. United States*, __U.S.__, 129 S. Ct. 687, 692 (2009).  That an offense presents a risk of physical injury to others, as *Begay* demonstrates, does not by itself suffice

to show that it is a crime of violence. Otherwise, drunk driving would be a crime of violence, and *Begay* makes clear that it is not. *Begay*, 128 S. Ct. at 1583; *see United States v. Templeton*, 543 F.3d 378, 383 (7th Cir. 2008).

In answering these questions, we treat a "crime of violence" under § 4B1.1(a) of the guidelines the same as a "violent felony" under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1); *see United States v. Houston*, 187 F.3d 593, 594–95 (6th Cir. 1999), because both laws share essentially the same definitions (if not the same titles), *compare* U.S.S.G. § 4B2.1(a) *with* 18 U.S.C. § 924(e)(2)(B). And in determining the nature of a defendant's prior conviction, we apply a "categorical" approach, meaning that we look at the statutory definition of the crime of conviction, not the facts underlying that conviction, to determine the nature of the crime. *Taylor v. United States*, 495 U.S. 575, 602 (1990). Save, that is, in one instance: If it is possible to violate a criminal law in a way that amounts to a crime of violence and in a way that does not, we may look at the indictment, guilty plea and similar documents to see if they "necessarily" establish the nature of the prior offense. *Shepard v. United States*, 544 U.S. 13, 26 (2005).

Kentucky criminalizes several types of "escape." Ford was spared the first one—first-degree escape—which covers "escapes from custody or a detention facility by the use of force or threat of force against another person." Ky. Rev. Stat. § 520.020(1). Yet he was convicted of second-degree escape, a broadly worded offense that covers any other "escape[] from a detention facility" or "escape[] from custody" by an individual "charged with or convicted of a felony." *Id.* § 520.030(1). To violate this provision, one need only leave "when the departure is unpermitted" or fail to return "following a temporary leave granted for a specific purpose or for a limited period." *Id.* § 520.010(5). A "detention facility" includes "any building . . . used for the confinement of a person: (a) Charged with or convicted of an offense; (b) Alleged or found to be delinquent; (c) Held for extradition or as a material witness; or (d) Otherwise confined pursuant to an order of court." *Id.* § 520.010(4). And "custody" includes any "restraint by a public servant pursuant to a lawful arrest, detention, or an order of court for law enforcement purposes," excluding only "supervision of probation or parole or constraint incidental to release on bail." *Id.* § 520.010(2). (Kentucky also has a third-degree offense not relevant here, which applies to

individuals, regardless of their charged or convicted offenses, who "escape[] from custody." *Id.* § 520.040.)

All said, a conviction for second-degree escape covers everything from a felon who breaks out of a maximum-security prison to one who fails to report to a halfway house. The crime at hand—a "walkaway" escape, U.S. Letter Br., Feb. 10, 2009, at 2—falls somewhere in between.

Under Sixth Circuit law at the time of Ford's sentencing, as the district court correctly recognized, a "walkaway" escape constituted a crime of violence. In *United States v. Bailey*, 510 F.3d 562, 566 (6th Cir. 2007), we held that second-degree escape under Kentucky law is a crime of violence, and we did so in the context of a defendant who claimed merely to have "walk[ed] away from a halfway house." 510 F.3d at 565 (internal quotation marks omitted).

Since then, however, the Supreme Court decided *Chambers*, which held that one type of escape conviction under Illinois law—a "failure to report for penal confinement"—is not a "violent felony" under the Armed Career Criminal Act. 129 S. Ct. at 689; *see* 18 U.S.C. § 924(e); 720 Ill. Comp. Stat. 5/31-6(a). Illinois criminalized (1) escape from a penal institution, (2) escape from the custody of an employee of a penal institution, (3) failure to report to a penal institution, (4) failure to report for periodic imprisonment, (5) failure to return from furlough, (6) failure to return from work and day release and (7) failure to adhere to the conditions of home confinement. 720 Ill. Comp. Stat. 5/31-6(a). The Court construed the Illinois law as encompassing at least two distinct categories of crimes—escape (1 and 2) and failure to report (3 through 6)—and possibly a third—failing to abide by home-confinement conditions (7). *Chambers*, 129 S. Ct. at 691. "[S]upport[ing] the intuitive belief that failure to report does not involve a serious risk of physical injury," the court reasoned, is the absence of empirical evidence showing that failure-to-report offenses lead to physical injury. *Id.* at 692. Nor, the Court added, is the offense similar in kind to the listed crimes of violence, as it is "a far cry from the purposeful, violent, and aggressive conduct potentially at issue when an offender uses explosives against property, commits arson, burgles a dwelling or residence, or engages in certain forms of extortion." *Id.* (internal quotation marks omitted).

*Chambers* modifies circuit law. Until now, we have taken the view that all escape offenses—from a failure to report at one end of the spectrum to a breakout at the other—constitute crimes of violence. *See Bailey*, 510 F.3d at 566; *United States v. Esteppe*, 483 F.3d 447, 451 (6th Cir. 2007); *United States v. Harris*, 165 F.3d 1062, 1067–68 (6th Cir. 1999); *United States v. Anglin*, 169 F. App'x 971, 975 (6th Cir. 2006); *United States v. Jackson*, 63 F. App'x 839, 843 (6th Cir. 2003); *United States v. Roberts*, 59 F. App'x 86, 88–89 (6th Cir. 2003); *United States v. Rodgers*, No. 99-7776, 2000 WL 1434706, *4–5 (6th Cir. Sept. 19, 2000); *see also United States v. Goodman*, 519 F.3d 310, 317–18 (6th Cir. 2008); *United States v. Lancaster*, 501 F.3d 673, 678 (6th Cir. 2007); *Houston*, 187 F.3d at 594–95. After *Chambers*, it is not that clear-cut. *Chambers* establishes that at least one type of escape offense—a failure to report—is not a crime of violence. And that conclusion requires us to modify our prior decisions suggesting that *all* manner of escape convictions under Kentucky law (or for that matter other States' laws), including failures to report, constitute crimes of violence.

*Chambers*, it seems to us, also undermines the notion that a "walkaway" conviction is a crime of violence. In the context of the Illinois law at issue, it is true, *Chambers* appeared to divide escape convictions into just "two separate crimes, namely escape from custody on the one hand, and a failure to report on the other." 129 S. Ct. at 691. A first reading of the case thus might suggest that, in the world of state-law escape offenses, the federal courts have just these two options to work with—leaving custody or failing to report to custody—and as between the two, it is safe to say that Ford's offense would be a departure from custody and thus would be a crime of violence. But in *Chambers* itself, the Court said there were "at least two" ways to divide up the offense, *id.*—perhaps because Illinois law contained another distinct offense (failure to comply with home-confinement conditions), *id.*, or perhaps because the Court appreciated that there may be other ways to characterize escapes as a matter of federal law.

If under Illinois law there were "at least two" ways to characterize an escape conviction in *Chambers*, there are *at least three* ways to characterize an escape conviction under Kentucky law. In addition to proscribing general departures from custody and general failures to return, Kentucky law separately criminalizes escapes involving "the use of force or threat of force against another person," and Kentucky law separately treats the offense as

a first-degree offense.  Ky. Rev. Stat. § 520.020(1); *see Chambers*, 129 S. Ct. at 691 ("[T]he statute itself not only lists escape and failure to report separately (in its title and its body) but also places the behaviors in two different felony classes (Class Two and Class Three) of different degrees of seriousness.") (citation omitted).  Given this distinction under Kentucky law, and given that the sentencing guidelines and ACCA themselves distinguish between crimes involving "force" as an element of the offense, *see* U.S.S.G. § 4B1.2(a)(1); 18 U.S.C. § 924(e)(2)(B)(i), and those that do not, *see* U.S.S.G. § 4B1.2(a)(2); 18 U.S.C. § 924(e)(2)(B)(ii), it is difficult to maintain that Kentucky escapes should be divided only by two.  But even if we may safely add a third category of the offense ("force[ful]" escapes), is it appropriate to add a fourth?  May we divide Kentucky law into at least four categories of escape:  leaving custody with the use or threat of force; leaving custody in a secured setting; leaving custody in a non-secured setting by "walking away"; or failure to report?

We think so.  *First*, it is not lost on us that the categorical approach requires courts to pick the right label, and "sometimes the choice is not obvious."  *Chambers*, 129 S. Ct. at 690.  Nor is it lost on us that the distinction frequently makes all the difference.  Think of the risk-of-physical-injury inquiry from the perspective of a definition of escape that picks up all departures from custody on the one hand and a definition that picks up just walkaway offenses on the other.  The former category will contain a higher risk of physical injury and therefore seem more like the prototypical crime of violence than the latter category by itself.  If we include walkaway escapes in the general category, they likely will be treated as crimes of violence; if not, they likely will not be.  In this respect, the level of generality is destiny, requiring us to be careful that the lines we draw are meaningful ones.

*Second*, in the aftermath of *Chambers*, a "walkaway" is a meaningfully distinct and meaningfully distinguishable category of escape as a matter of federal law.  No doubt Kentucky's broadly worded definition of second-degree escape does not separate walkaways from other escapes.  But neither does it separate failures to report from departures from custody.  If *Chambers* permits the federal courts to treat failures to report as separate offenses under Illinois law, it would seem to permit them under Kentucky law, whether the state statute separately describes them or not, because the end-game question is whether the offense is a "crime of violence," U.S.S.G. § 4B1.2(a), which is a matter of federal, not state, law.  Much as failures to report to custody represent a distinct form of escape, moreover, so

do walkaways. There is a difference between individuals who overcome physical barriers to freedom and those who walk off the grounds—those in other words who leave a facility without removing a physical restraint, without breaking a lock on a door, without climbing over a prison wall or security fence or without otherwise breaking through any other form of security designed to keep them put. *See Templeton*, 543 F.3d at 382–83; *see also United States v. Piccolo*, 441 F.3d 1084, 1088–89 (9th Cir. 2006). An unauthorized departure from a halfway house comes to mind, as does an unauthorized departure from an unsecured facility.

*Third*, a walkaway escape does not present the *risk* of physical injury to others that the listed crimes of violence do. No one in this case has offered any empirical evidence suggesting that walkaway escapes, in contrast to traditional escapes, are apt to lead to serious risks of physical injury. And the one court to our knowledge to look into the issue, the Seventh Circuit, found that they have no such risk. *Templeton*, 543 F.3d at 382 (noting that, according to a recent study, "8% of escapees commit violence against guards in the process of getting away, and that at least 6% of escapees commit violent crimes such as murder or robbery against civilians while on the lam. By contrast, walkaways produced no deaths or injuries.") As with failure-to-report offenses, not just an "intuitive belief," but hard data as well, suggest that this is not a prototypical crime of violence. *Chambers*, 129 S. Ct. at 692. A walkaway escapee, like "an individual who fails to report," also "would seem unlikely . . . to call attention to his whereabouts by simultaneously engaging in additional violent and unlawful conduct." *Id.* "The question is whether such an offender is significantly more likely than others to attack, or physically to resist, an apprehender, thereby producing a 'serious potential risk of physical injury.'" *Id.* (quoting § 924(e)(2)(B)(ii)). Nothing suggests that is the case with walkaway offenses.

*Fourth*, walkaway offenses do not involve the same *type* of "purposeful, violent, and aggressive" conduct that the listed crimes of violence do. *Id.* (internal quotation marks omitted). No doubt, all walkaway offenders have engaged in purposeful conduct. After that, however, there is nothing in the statute that requires the offense to involve purposeful violence or purposeful aggressiveness. All that the Kentucky statute requires is a "departure" that is "unpermitted," Ky. Rev. Stat. § 520.010(5), and it defines the "detention facility" from which the departure occurs as "any building . . . used for the confinement of

a person," *id.* § 520.010(4). A walkaway does "not involve 'aggressive' conduct against either a person (as in extortion) or property (arson). All the [law] requires is that the escapee leave." *Templeton*, 543 F.3d at 383 (internal quotation mark omitted). The "otherwise" requirement demands not just that the offense involve a similar risk of injury but also that it involve a similar type of crime. The "listed examples—burglary, arson, extortion, or crimes involving the use of explosive—illustrate the kinds of crimes that fall within the statute's scope. Their presence indicates that the statute covers only *similar* crimes, rather than *every* crime that 'presents a serious potential risk of physical injury to another.'" *Begay*, 128 S. Ct. at 1584–85 (quoting 18 U.S.C. § 924(e))(2)(B)(iii)). If driving under the influence (*Begay*) and a failure to report or return to prison (*Chambers*) are not sufficiently "purposeful, violent, and aggressive" to satisfy this requirement, neither is a walkaway offense.

*Fifth*, if any doubt remains about this conclusion, the rule of lenity alleviates it. When ambiguity clouds the meaning of a criminal statute, "the tie must to go the defendant." *United States v. Santos*, __U.S.__, 128 S. Ct. 2020, 2025 (2008) (plurality); *see United States v. Bass*, 404 U.S. 336, 347–49 (1971). As Justice Scalia recently explained, the rule rightly "places the weight of inertia upon the party"—the government—"that can best induce Congress to speak more clearly," it prevents the courts from having to "play the part of a mind reader" and it is a "venerable" requirement that the federal courts have applied for roughly two centuries:

> In our seminal rule-of-lenity decision, Chief Justice Marshall rejected the impulse to speculate regarding a dubious congressional intent. "[P]robability is not a guide which a court, in construing a penal statute, can safely take." *United States v. Wilberger*, 5 Wheat. 76, 105 (1820). And Justice Frankfurter, writing for the Court in another case, said the following: "When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity." *Bell v. United States*, 349 U.S. 81, 83 (1955).

*Santos*, 128 S. Ct. at 2025–26. A walkaway escape is not unambiguously a crime of violence.

* * *

To recap:  the first question in this case—the *Taylor* question—is whether the definition of the state-law offense by itself establishes that it is a "crime of violence."   A conviction for second-degree escape does not show that Ford committed a crime of violence because the offense covers a variety of escapes, some of which (a failure to report and to return, at least) are not crimes of violence.  The second question—the *Shepard* question—is whether the government nonetheless can show that the state-law conviction was a crime of violence by bringing forward reliable documents from the underlying conviction that "necessarily" establish that the defendant committed a crime of violence.  Here, the parties agree, reliable documents show that Ford committed a "walkaway" escape, which no doubt may create a greater risk of physical injury than a failure to report, but which remains different from a jailbreak and other crimes of violence both in kind and in its risk of physical injury to others.  For these reasons and those elaborated above, a walkaway is not a crime of violence.

In reaching this conclusion, we note that the government does not oppose it.  In the aftermath of *Chambers*, the government concedes that Ford's walkaway offense does not amount to a crime of violence, "retreat[ing] from its prior position that walkaway escapes are violent felonies." Letter Br., Feb. 11, 2009 at 1 (internal quotation mark and alteration omitted).  That concession is not dispositive because a party's position in a case (even when that party is the United States) does not dictate the meaning of a federal law, *cf. Hohn v. United States*, 524 U.S. 236, 248 (1998), because *Chambers* requires a modification of circuit precedent and because the separate treatment of walkaway escapes after *Chambers* deserves an explanation.

III.

For these reasons, we reverse and remand for resentencing.