# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2791

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Jose Parks, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: April 13, 2010
Filed: September 7, 2010

_____

Before LOKEN, HANSEN, and MELLOY, Circuit Judges.

_____

LOKEN, Circuit Judge.

Jose Parks pleaded guilty to possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1). The district court[1] sentenced him as a career offender to 151 months in prison, the bottom of the career offender advisory guidelines range. If Parks is not a career offender, the range would be 41 to 51 months. Parks appealed, arguing that his prior Missouri conviction for escape from confinement was not a crime of violence. We affirmed, applying our prior rulings that all escape offenses are, categorically, crimes of violence. United States v. Parks, 249

_____

[1] The HONORABLE E. RICHARD WEBBER, United States District Judge for the Eastern District of Missouri.

F. App'x 484, 485 (8th Cir. 2007). The Supreme Court then decided Chambers v. United States, 129 S. Ct. 687 (2009), which held that failure to report or return to confinement is not a violent felony, and remanded this case to us for reconsideration in light of Chambers. Parks v. United States, 129 S. Ct. 994 (2009).

Noting that "whether a walkaway escape is a violent felony under Chambers and Begay [v. United States, 553 U.S. 137 (2008),]" is an open question, and that the Missouri statute at issue "may include failure to report or return offenses," we remanded for further sentencing proceedings, instructing the district court "to analyze Parks's prior escape conviction under [Mo. Rev. Stat.] § 575.210 in light of Chambers and Begay." United States v. Parks, 561 F.3d 795, 798 (8th Cir. 2009).[2] On remand, the district court determined that Chambers did not alter the court's conclusion that Parks's escape offense was a crime of violence and re-sentenced him to 151 months in prison. Parks appeals, arguing that walking away from a halfway house is not a crime of violence. Agreeing with the district court that Parks's offense was not a mere walkaway, we affirm without deciding this recurring issue.

The career offender provisions increase an adult defendant's offense level and criminal history category if he has two prior felony convictions for crimes of violence or controlled substance offenses. See U.S.S.G. § 4B1.1. Crime of violence is defined as an offense punishable by more than one year in prison that -

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

---

[2] The Armed Career Criminal Act at issue in Chambers uses the term "violent felony." 18 U.S.C. § 924(e)(2)(B). We construe "crime of violence" and "violent felony" as having the same meaning. United States v. Stymiest, 581 F.3d 759, 767 (8th Cir. 2009), cert. denied, 130 S. Ct. 2364 (2010).

(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). In determining whether a prior conviction was for a crime of violence, we apply a categorical approach, looking to the elements of the offense as defined in the Missouri statute of conviction rather than to the facts underlying the defendant's prior conviction. See James v. United States, 550 U.S. 192, 202 (2007). However, if the statute is overinclusive -- in other words, when the statute "encompasses multiple generic crimes, and when some qualify as crimes of violence while others do not" -- we apply a modified categorical approach that allows the sentencing court to look at the charging document, plea colloquy, and comparable judicial records to determine whether the prior offense was a crime of violence. United States v. Ross, No. 09-3879, 2010 WL 2869560, at *1 (8th Cir. 2010), quoting Johnson v. United States, 130 S. Ct. 1265, 1273 (2010); see United States v. Furqueron, 605 F.3d 612, 614 (8th Cir. 2010).

Parks was convicted in 1989 of violating Mo. Rev. Stat. § 575.210. Entitled escape or attempted escape from confinement, the statute at that time provided:

> 1. A person commits the crime of escape or attempted escape from confinement if, while being held in confinement after arrest for any crime, or while serving a sentence after conviction for any crime, he escapes or attempts to escape from confinement.

> 2. Escape or attempted escape from confinement is a class D felony except that it is:

>> (1) A class A felony if it is effected or attempted by means of a deadly weapon or dangerous instrument or by holding any person as hostage;

> (2) A class C felony if the escape or attempted escape is facilitated by striking or beating any person.

Mo. Rev. Stat. § 575.210 (1989). The issue on appeal is whether Parks's class D felony conviction for escape from confinement was a crime of violence under the residual clause of U.S.S.G. § 4B1.2(a)(2) because it "otherwise involves conduct that presents a serious potential risk of physical injury to another."[3]

1. A problem in classifying escape offenses for these purposes is that criminal escape statutes vary significantly in structure. The Illinois statute at issue in Chambers described different kinds of criminal escape behavior in discrete subparts, making it easy for the Court to "treat the statute for ACCA purposes as containing at least two separate crimes." The Court distinguished failure to report offenses, which it concluded are not violent felonies, from "escape from custody" offenses. 129 S. Ct. at 691. But under the federal escape statute, 18 U.S.C. § 751(a), and broadly worded statutes in many States, failures to return are not separately listed but are nonetheless encompassed in the conduct prohibited. Reviewing § 751(a) convictions after Chambers, we concluded that the statute is over-inclusive for this reason and therefore must be analyzed under the modified categorical approach. See United States v. Pearson, 553 F.3d 1183, 1186 (8th Cir. 2009), followed in United States v. Jackson, 594 F.3d 1027, 1029-30 n.2 (8th Cir. 2010).

By contrast, the Seventh Circuit has concluded that § 751(a) is not textually "divisible," and therefore *all* violations are, categorically, *not* crimes of violence. United States v. Hart, 578 F.3d 674, 680-81 (7th Cir. 2009). Though the Supreme

---

[3]We note that a class A or class C felony conviction for escape from confinement would be a crime of violence under § 4B1.2(a)(1). See Johnson, 130 S. Ct. at 1270-71. Only class D felony offenses do not involve the use of physical force and therefore must be analyzed, like the failure to return offense in Chambers, under the residual clause of § 4B1.2(a)(2).

Court has not addressed this issue and its opinions can be read to support both conclusions, we disagree with the Seventh Circuit. The Court said in Chambers that the question is whether "the behavior underlying" one type of violation "differs so significantly from the behavior underlying" another type of violation "that for ACCA purposes a sentencing court must treat the two as different crimes." 129 S. Ct. at 690. This suggests that over-inclusiveness for career offender purposes may arise even if a criminal statute -- which of course was not drafted with this issue in mind -- is not *textually* divisible. Thus, like all other circuits to address the question,[4] we adhere to our decision in Pearson that § 751(a) -- and similar broadly worded state escape statutes -- must be analyzed for over-inclusiveness, as our prior remand instructed the district court to do in this case.

2. The Missouri escape statutes are not as broad as some of the statutes at issue in the cases cited in footnote 4. Rather, Missouri separately prohibits escape from a state mental hospital (Mo. Rev. Stat. § 575.195), escape from custody after arrest (§ 575.200), escape from confinement (§ 575.210), and failure to return (§ 575.220). "Confinement" is defined as being "held in a place of confinement pursuant to arrest or order of a court," Mo. Rev. Stat. § 556.061(4); a person is not in confinement if he is on probation or parole or is "serving a sentence under a work-release program, and . . . is not being held in a place of confinement," § 556.061(4)(b). A "place of confinement" is defined as "any building or facility and the grounds thereof wherein a court is legally authorized to order that a person charged with or convicted of a crime be held." Mo. Rev. Stat. § 556.061(21). The Missouri penal code does not

---

[4] See, e.g., United States v. Lee, 586 F.3d 859, 866 (11th Cir. 2009) (New Jersey statute), cert. denied, 130 S. Ct. 2392 (2010); United States v. Charles,. 576 F.3d 1060, 1068-69 (10th Cir.) (18 U.S.C. § 751), cert. denied, 130 S. Ct. 1027 (2009); United States v. Mills, 570 F.3d 508, 511-12 (2d Cir. 2009) (Connecticut statute); United States v. Pratt, 568 F.3d 11, 19-21 (1st Cir.) (New Hampshire statute), cert. denied, 130 S. Ct. 425 (2009); United States v. Ford, 560 F.3d 420, 426 (6th Cir. 2009) (Kentucky statute); United States v. Piccolo, 441 F.3d 1084, 1089-90 (9th Cir. 2006) (18 U.S.C. § 751).

define the term "escape," but its ordinary meaning is broadly defined as "[t]he act or an instance of breaking free from confinement, restraint, or an obligation." Black's Law Dictionary 583 (8th ed. 2004). By its plain language, then, § 575.210 encompasses the spectrum of offenses between escape from a guarded, maximum security facility and leaving an unguarded facility without authority, such as walking away from a halfway house. See Ford, 560 F.3d at 424 (construing a similar Kentucky statute to include escapes from confinement and walkaway escapes).

Because a number of circuits have held or intimated that "walkaway" escapes are not crimes of violence, an open issue in this circuit, we directed the district court to consider this issue.[5] As the district court recognized, before reviewing the facts of Parks's particular offense using the modified categorical approach, we must analyze, generically, what types of § 575.210 class D felony convictions (if any) are crimes of violence. In conducting that analysis, we first determine the kinds of behavior that would make at least *some* escapes from confinement "conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2). Parks argues that class D felony escape convictions for walking away from a halfway house -- offenses he defines as "non-aggravated escapes from low-security facilities" -- are not crimes of violence under Chambers and Begay.

---

[5]Our prior remand order also raised the question whether § 575.210 is over-inclusive under Pearson because it includes failure to return offenses, noting that the last sentence of § 217.390 provides that an offender placed on "escape" status for failing to return to, for example, a halfway house, "shall be sentenced for escape as provided in 575.210." But that issue is irrelevant here. We conclude that § 575.210 in broadly prohibiting escapes from confinement is potentially over-inclusive; therefore, applying the modified categorical approach, any § 575.210 class D felony conviction for a failure-to-return offense is not a crime of violence under Chambers.

-6-

Escape decisions prior to <u>Chambers</u> focused on the risk of physical injury presented at the time of the escape -- the risk that one attempting to escape will resort to physical force if interrupted by a prison guard or police officer "is at least as great as that presented when a temporarily absent resident returns home and encounters a burglar," <u>United States v. Hairston</u>, 71 F.3d 115, 118 (4th Cir. 1995) (quotation omitted), <u>cert. denied</u>, 517 U.S. 1200 (1996). The Court in <u>Chambers</u> did not reject this focus. But it concluded that failing to report or return is passive conduct that at the time poses no serious potential risk of physical injury to another. "The behavior that likely underlies a failure to report would seem less likely to involve a risk of physical harm than the less passive, more aggressive behavior underlying an escape from custody." 129 S. Ct. at 691.[6]

Viewing the residual clause's plain language and these prior decisions, we conclude that the critical distinction among § 575.210 class D felony offenses is between escape from a secured and guarded facility and escape from an unsecured facility. These are "meaningfully distinct and meaningfully distinguishable categor[ies] of escape as a matter of federal law." <u>Ford</u>, 560 F.3d at 424. We disagree with the dissent's focus on the colloquial terms, "walkaway" and "half-way house," rather than on the comparative risk of violence inherent in different types of escape behavior. At the critical time of an escape from confinement, the potential risk of physical injury to another turns not so much on the type of facility -- halfway house versus jail or prison -- as on whether the facility is secured in some fashion and guarded by a person with custodial responsibility to keep offenders confined *at the*

---

[6]Prior decisions also focused on the risk of violence when a successful escapee is later recaptured -- "[e]ven the most peaceful escape cannot eliminate the potential for violent conflict when the authorities attempt to recapture the escapee." <u>United States v. Nation</u>, 243 F.3d 467, 472 (8th Cir. 2001). The Court in <u>Chambers</u> cited United States Sentencing Commission statistics showing only a minimal risk of physical injury when failure-to-report offenders are later apprehended. 129 S. Ct. at 692-93. The government does not rely on this risk of violence, so we put it aside.

*time of the escape*. The enumerated crime of burglary can be accomplished without purposeful violence, but it is a crime of violence because the offender purposefully and aggressively creates a substantial *risk* of violent confrontation. See United States v. Hennecke, 590 F.3d 619, 622-23 (8th Cir. 2010). Likewise, the inmate escaping from guarded confinement engages in purposeful, violent, and aggressive behavior that creates the same risk. Moreover, unlike a homeowner who may decline to confront a burglar, correctional facility guards have a duty to confront and challenge an inmate escaping from confinement.[7]

Having defined the category of escapes from confinement that are crimes of violence, we use the modified categorical approach to determine whether Parks's prior offense fell within that category. On remand, the parties submitted judicial records establishing that Parks was charged with a class C felony violation of § 575.210 but pleaded guilty to a class D violation. At the change of plea hearing, Parks admitted that the State could prove beyond a reasonable doubt that on -

> June 11, 1989, approximately 4:35 p.m. . . . the defendant Jose Parks escaped from St. Mary's Honor Center by running past the front door officer and out the door at about the stated time as the door was opened for a routine intake of returning inmates.

Based on this evidence, which the district court properly considered in applying the modified categorical approach, see Shepard v. United States, 544 U.S. 13, 26 (2005), the court correctly concluded that Parks's offense was a crime of violence. Judicial records showing that Parks ran past a guard and out a facility door that was open only

---

[7] Although we do not read Chambers as requiring the government to present statistical evidence, the Sentencing Commission statistics set forth in Appendix B in Chambers show that offenses for "leaving nonsecure custody" resulted in use of force, use of a dangerous weapon, or injury in approximately 2% of the surveyed cases. Comparing that percentage to available data for burglaries, the risk of physical injury is "serious." United States v. Templeton, 543 F.3d 378, 381 (7th Cir. 2008).

to receive returning inmates establish that his conviction fell within the category of class D felony escape-from-confinement convictions that are crimes of violence as a matter of federal law. The presence of a front door guard prevented inmates from coming and going as they pleased. The fact that there was a regular time for the door to be opened for returning inmates reveals that the door was normally closed and locked. Parks therefore committed the generic crime of escape from a secured facility. Cf. United States v. Pratt, 568 F.3d 11, 22 (1st Cir.), cert. denied, 130 S. Ct. 425 (2009); Ford, 450 F.3d at 424; U.S.S.G. § 2P1.1 cmt. n.1 ("'Non-secure custody' means custody with no significant physical restraint."). Therefore, we need not decide whether § 575.210 also includes a universe of true walkaway class D felony offenses that are not crimes of violence.

The judgment of the district court is affirmed.

MELLOY, Circuit Judge, dissenting.

I agree with the majority that we must apply the modified categorical approach to Missouri's general escape statute. I disagree, however, with the majority's fact-specific inquiry into the particular level of security present at the time of Parks's escape. Instead, I would hold that a walkaway escape from a halfway house, as it is generally committed, is not a crime of violence. Textual support exists in Missouri's statutes for subdividing non-violent escapes between walkaway escapes from halfway houses and residential treatment facilities, on the one hand, and different forms of escape, on the other. This distinction, based on the type of facility involved in the escape rather than the specific level of security present at the moment of any particular escape, captures the relevant differences between types of escapes as generally committed "in the ordinary case." James v. United States, 550 U.S. 192, 208 (2007).

Further, this facility-based definition relies upon facts more likely to be addressed in the relevant court records from prior offenses rather than facts based on

assumptions as in the present case, or through impermissible and expanded evidentiary inquiries.[8]  In general, there exists a fine line separating the examination of crimes as committed "in the ordinary case," id., from overly specific examination of crimes as committed in any particular instance, see Taylor v. United States, 495 U.S. 575, 601 (1990) ("If Congress had meant to adopt an approach that would require the sentencing court to engage in an elaborate factfinding process regarding the defendant's prior offenses, surely this would have been mentioned somewhere in the legislative history.").  By defining walkaway escape through reference to the quantity and type of security that exists, I believe the majority has crossed this line in a manner that will lead to confusion in application and force district courts to focus too individually upon how particular defendants committed their specific offenses rather than how the offense is committed in the ordinary case.

_____

[8]Further, it likely will be possible in many cases to take judicial notice of the type of facility at issue, or to discern the nature of the facility from precedent.  See, e.g., St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 504 (1993) ("Petitioner St. Mary's Honor Center (St. Mary's) is a halfway house operated by the Missouri Department of Corrections and Human Resources (MDCHR)."); State v. Wells, 804 S.W.2d 746, 747 (Mo. 1991) (noting that an inmate from St. Mary's was outside the facility visiting the home of a relative); State v. Chambers, 714 S.W.2d 527, 533 (Mo. 1986) ("[A]n inmate at . . . St. Mary's Honor Center in St. Louis . . . was free to travel outside the Honor Center because he had been issued a 24-hour pass."); Davis v. State, 829 S.W.2d 610, 610 (Mo. Ct. App. 1992) (noting a defendant was "temporarily permitted to go outside of the facility without being accompanied by a guard with the understanding he was required to return to St. Mary's . . . that evening"); State v. Galvan, 795 S.W.2d 113, 115 (Mo. Ct. App. 1990) (noting a defendant was "assigned to St. Mary's Honor Center, a 'halfway house' in St. Louis"); In the Interest of M.L.W., 788 S.W.2d 759, 760 (Mo. Ct. App. 1990) (describing a St. Mary's Honor Center resident as working at a job outside the facility); Becker v. Mo. Dep't of Corrs. & Human Servs., 780 S.W.2d 72, 74 (Mo. Ct. App. 1989) (describing St. Mary's Honor Center and stating, "In an honor center, an inmate has already received a conditional release date before being transferred there. At the center inmates are given certain privileges. They are allowed to work, go to school, associate with their family and make use of passes.").

Further, even if I were in agreement with the majority's approach, the record in the present case does not demonstrate the risk of physical violence or the potentially explosive or volatile circumstances presumed by the majority's reasoning. Rather, the "front door officer" at the halfway house was devoid of authority to engage, confront, or pursue any residents who left without permission.[9] To the extent, then, that it might ever be appropriate to inquire specifically as to the unproven facts surrounding a particular resident's escape from a halfway house and examine the precise level of security present at the moment of an escape, the present case does not support the majority's conclusion. I believe that, in most cases, state court records will more likely identify the facilities from which residents escape rather than details surrounding the level of security at the time of escape. For eminently practical reasons, then, I believe the textually supported subdivision between types of facilities will lend itself to more sensible application in future cases.

---

[9]The record does not support the majority's conclusion that the front door officer was a guard whose presence necessarily shows Parks risked a violent encounter when fleeing the facility. The scope of authority regarding a particular halfway house employee's use of force is not the type of fact likely to be present in most state court records of prior offenses. On the other hand, the general concept of halfway houses is well understood, and state court records are likely to identify the facilities involved in prior escapes as jails, prisons, or halfway houses. Further, I note that Parks has submitted affidavits from two employees of the particular halfway house at issue in his case, and both employees assert that they were specifically instructed not to engage, confront, or otherwise attempt to physically stop residents from leaving the facility. Rather, the front door officers were instructed simply to report escapes. I do not mean to suggest that we should base our decisions on affidavits or other evidence outside the record of the prior offense. I note these facts only to illustrate the incorrect assumptions underlying the majority's application of its overly fact-specific and individualized inquiry in this case.

Missouri Revised Statute § 217.390 (1989)[10] demonstrates that mere walkaway escapes from halfway houses and unsecured facilities were punished under Missouri's escape statute at the time of Parks's escape. Section 217.390 provides a textual basis for subdividing Missouri's escape statute into at least two distinct categories: walkaway escapes and other escapes from confinement. Cf. United States v. Woods, 576 F.3d 400, 406 (7th Cir. 2009) (emphasizing the importance of divisibility in a statute's text). Because section 575.210 is overinclusive and textually divisible by type of facility, the next step is to apply the modified categorical approach, which "permits a court to determine which statutory phrase was the basis for the conviction by consulting the trial record—including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms." Johnson v. United States, 130 S. Ct. 1265, 1273 (2010). Considering these state court materials, we must then determine which offense Parks committed. Importantly, in deciding whether an offense is a crime of violence, we must "consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." Begay v. United States, 553 U.S. 137, 141 (2008). This approach "avoids the practical

---

[10]At the time of Parks's conviction, Section 217.390 provided:

> An offender *absenting himself without leave* from any person in charge of his supervision, or from any work assignment, educational release program or job outside of the institution, or *from any halfway house* or correctional institution operated by another political subdivision to which he has been assigned, or who willfully fails to return to such place at the appointed time after having been permitted to leave, shall be deemed on "escape" status. He shall be reported by the division to the appropriate law enforcement officer and upon conviction *shall be sentenced for escape as provided in [Mo. Rev. Stat.] section 575.210.*

(Emphasis added).

-12-

difficulty of trying to ascertain at sentencing, perhaps from a paper record mentioning only a guilty plea, whether the present defendant's prior crime, as committed on a particular occasion, did or did not involve violent behavior." Chambers v. United States, 129 S. Ct. 687, 690 (2009).

The error in the district court's analysis—and the driving force in my dissent—is that it relies on facts particular to Parks's offense to impute a risk of violence that would not exist in the ordinary case of a walkaway escape. The district court plainly considered whether Parks's "*behavior* involved conduct that presented a serious potential risk of physical injury to another"—not whether the statutory offense, as it is ordinarily committed, would present a serious potential risk of physical injury to another. The majority relies on facts specific to Parks's offense, for example, that Parks was running, that a front door officer was present, and that the door he exited was supposed to be used for intake. Majority Op. supra p. 8–9. Without a textual basis, the majority subdivides Missouri Revised Statute § 575.210 into "true walkaway offenses" and some other category based on the particular level of security at the moment of a specific defendant's escape. This analysis, in my view, is not faithful to the intended purpose of the modified categorical approach because it utilizes the state court records to evaluate *how* Parks committed a previous crime, rather than *which* statutory crime Parks committed.

I would hold that Missouri's escape statute is overinclusive and divisible between escapes from confinement and walkaway escapes. Further, I believe the state court records show that Parks, by "absenting himself without leave from . . . [the] half-way house," committed a walkaway escape. Mo. Rev. Stat. § 217.390. Lastly, without analyzing the issue in detail here, I believe our Court should join the persuasive majority of circuit courts, including every published opinion from a circuit court deciding this issue, to hold that a walkaway escape in the ordinary case is not a crime of violence for purposes of the career-offender sentencing guideline. See, e.g., United States v. Lee, 586 F.3d 859, 874 (11th Cir. 2009), cert. denied, 130 S. Ct.

2392 (2010); <u>United States v. Hopkins</u>, 577 F.3d 507, 514–15 (3d Cir. 2009), <u>cert. denied</u>, 130 S. Ct. 1912 (2010); <u>United States v. Charles</u>, 576 F.3d 1060, 1068–69 (10th Cir. 2009), <u>cert. denied</u>, 130 S. Ct. 1027 (2009); <u>United States v. Ford</u>, 560 F.3d 420, 423 (6th Cir. 2009); <u>United States v. Templeton</u>, 543 F.3d 378, 383 (7th Cir. 2008); <u>United States v. Piccolo</u>, 441 F.3d 1084, 1088 (9th Cir. 2006). <u>But see</u> <u>United States v. Delgado</u>, 320 F. App'x 286, 286–87 (5th Cir. 2009), <u>cert. denied</u>, 130 S. Ct. 552 (2009) (unpublished per curiam).

For these reasons, I respectfully dissent.

_____