*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 10a0390p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 09-3782

JAIME RUVALCABA,

*Defendant-Appellant.*

—————————————

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 08-00379-001—John R. Adams, District Judge.

Argued: December 10, 2010

Decided and Filed: December 22, 2010

Before: MARTIN and SILER, Circuit Judges; BELL, District Judge.[*]

—————————————

## COUNSEL

**ARGUED:** Amy B. Cleary, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant. Blas E. Serrano, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee. **ON BRIEF:** Amy B. Cleary, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant. Blas E. Serrano, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

—————————————

## OPINION

—————————————

BOYCE F. MARTIN, JR., Circuit Judge. Jaime Ruvalcaba appeals the district court's reliance on his prior state convictions to apply the career offender enhancement in calculating his advisory Guidelines sentencing range. However, the district court

—————————————

[*] The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

1

properly applied the career offender enhancement and we therefore **AFFIRM** Ruvalcaba's sentence at the lower end of the properly calculated Guidelines range.

I.

Ruvalcaba pled guilty to conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846 (2006). Under the plea agreement, Ruvalcaba accepted responsibility for distributing at least 500 grams but less than two kilograms of cocaine, which put him at a base offense level of twenty-six. The government agreed to recommend a three-level reduction based on Ruvalcaba's acceptance of responsibility. Ultimately, the agreement recommended a total offense level of twenty-three.

The plea did not contain any agreement on Ruvalcaba's criminal history, but stated that the government would not oppose a sentence at the low end of the applicable Guidelines range if Ruvalcaba's criminal history were category V or higher. Additionally, although the district court later entertained argument on this issue from Ruvalcaba, the plea agreement contained a provision prohibiting Ruvalcaba from requesting a downward departure or variance.

The Presentence Report initially conformed to the parties' expectations in the plea agreement, finding Ruvalcaba to be at a total offense level of twenty-three, criminal history category V, with a resulting advisory range of seven years to eight years and nine months imprisonment. However, a revised Presentence Report determined that Ruvalcaba should be sentenced as a career offender pursuant to the provision in section 4B1.1 of the United States Sentencing Commission Guidelines Manual. The Probation Office suggested this enhancement based on Ruvalcaba's two prior convictions for unlawfully discharging a firearm at an occupied structure in violation of Ohio law.

Applying the career offender enhancement moved Ruvalcaba up to a base offense level of thirty-four and a criminal history category of VI. The three-level reduction in the plea agreement for accepting responsibility brought Ruvalcaba to a total offense level of thirty-one. Accordingly, after applying the career offender provisions, Ruvalcaba's

Guidelines advisory range more than doubled to fifteen years and eight months to nineteen years and seven months imprisonment.

The district court followed the recommendations in the revised Presentence Report, applied the career offender enhancement, and sentenced Ruvalcaba to fifteen years and eight months imprisonment—the lower bound of the Guidelines range. In a written opinion explaining its application of the career offender enhancement, the district court reviewed the relevant sentencing factors outlined in 18 U.S.C. 3553(a) in detail, and stated that it would still impose a sentence of fifteen years and eight months even if the career offender enhancement did not apply.

## II.

"The touchstone of appellate review of a district court's sentencing decision is reasonableness, a concept that has both a procedural and a substantive component." *United States v. Gunter*, 620 F.3d 642, 645 (6th Cir. 2010) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Grossman*, 513 F.3d 592, 595 (6th Cir. 2008)). When reviewing a district court's sentencing determination, we endeavor to "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall*, 552 U.S. at 51. We typically employ the abuse of discretion standard to reasonableness review. *United States v. Thompson*, 515 F.3d 556, 560 (6th Cir. 2008).

However, a district court's determination that a prior conviction is a "crime of violence" under section 4B1.1 of the Guidelines is reviewed de novo. *United States v. Hargrove*, 416 F.3d 486, 494 (6th Cir. 2005). In determining whether a conviction was for a crime of violence, we use the "categorical approach" and look "only to the fact of conviction and the statutory definition—not the facts underlying the offense—to determine whether that definition supports a conclusion that the conviction was for a crime of violence." *United States v. Bartee*, 529 F.3d 357, 359 (6th Cir. 2008). Under

this approach, courts consider the offense "generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *Begay v. United States*, 553 U.S. 137, 141 (2008).[1]

## A.    Whether Ruvalcaba's Prior Convictions Are Void.

After the district court sentenced Ruvalcaba, the Ohio Supreme Court held in *State v. Singleton*, 920 N.E.2d 958, 964 (Ohio 2009), that sentences for offenders who did not receive proper post-release control notice are void. From this, Ruvalcaba argues that his prior convictions are therefore void and cannot be considered in determining whether he meets the definition of a career offender because he did not receive proper post-release control notice. However, a panel of this Court recently rejected another defendant's identical argument. *United States v. Aguilar-Diaz*, – F.3d —, 2010 WL 4883806, at *4-5 (6th Cir. Dec. 2, 2010). Although a defendant in Ruvalcaba's position may be able to challenge his or her prior convictions as void under recent decisions from the Ohio Supreme Court through state channels for seeking post conviction relief, attempting to do so during sentencing for unrelated crimes in federal court is an impermissible collateral attack. *Id.*; *see also Custis v. United States*, 511 U.S. 485, 496 (1994). Therefore, because Ohio has not declared Ruvalcaba's prior convictions void, the district court did not err by considering them.

## B.    Whether Ruvalcaba's Prior Convictions Are "Crimes of Violence."

A defendant is a career offender if (1) he or she was at least eighteen years old when he or she committed the instant offense; (2) the instant offense is a felony that is either a crime of violence or a controlled substance offense; and (3) he or she has been convicted of at least two prior felony crimes of violence or controlled substance offenses. U.S.S.G. § 4B1.1(a) (2010). Ruvalcaba was over eighteen years old when he

---

[1]Ruvalcaba argues that the district court did not follow this categorical approach and improperly relied on information in the police incident reports underlying the offenses to determine that his prior convictions were crimes of violence. However, the district court does not appear to have done this, and, even if it did, it is irrelevant in light of this Court's de novo review.

committed the instant felony drug offense, satisfying the first and second requirements. Therefore, the only issue is whether Ruvalcaba's two prior convictions for discharging a firearm at or into a habitation in violation of Ohio Revised Code § 2923.161(A)(1) are "crimes of violence."

The Guidelines define a "crime of violence" as an offense that warrants at least a year in prison and "(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." *Id.* § 4B1.2(a); *see United States v. Ford*, 560 F.3d 420, 421 (6th Cir. 2009). The statute Ruvalcaba violated does not require the use of physical force against another. Ohio Rev. Code Ann. § 2923.161 (West 2010). Similarly, Ruvalcaba's prior convictions under this statute are not for any of the specifically enumerated crimes in the career offender provision. Therefore, violation of this statute is only a "crime of violence" under the career offender provision of the Guidelines if it "presents a serious potential risk of physical injury to another."

In pertinent part, section 2923.161 provides that:

(A)    No person, without privilege to do so, shall knowingly do any of the following:

(1)    Discharge a firearm at or into an occupied structure that is a permanent or temporary habitation of any individual[.]

*Id.* The code goes on to define "occupied structure":

(C) "Occupied structure" means any house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter, or any portion thereof, to which any of the following applies:

(1) It is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied and whether or not any person is actually present.

(2) At the time, it is occupied as the permanent or temporary habitation of any person, whether or not any person is actually present.

(3) At the time, it is specially adapted for the overnight accommodation of any person, whether or not any person is actually present.

(4) At the time, any person is present or likely to be present in it.

*Id.* § 2909.01. We proceed to consider whether violation of this statute presents a serious potential risk of physical injury to another and whether the crime is sufficiently similar to the enumerated crimes in section 4B1.2(a)(2) of the Guidelines to qualify as a crime of violence.

**1.     Risk of physical injury.**

As the district court concluded, firing a gun at even an unoccupied structure in violation of section 2923.161 inherently presents a serious potential risk of injury to another. Intuitively, and as borne out regularly in the news, firing a gun can often have unintended, dangerous consequences. Consistent with this, courts have noted that violations of statutes similar to Ohio's present a risk of physical injury even if the structure is unoccupied. For that reason, these courts have held that violations of statutes similar to Ohio's are crimes of violence and may form the basis of a career offender enhancement. *United States v. Terry-Crespo*, 356 F.3d 1170, 1178 (9th Cir. 2004) (Oregon statute); *United States v. Cole*, 298 F.3d 659, 662 (7th Cir. 2002) (Illinois statute); *United States v. Weinert*, 1 F.3d 889, 891 (9th Cir. 1993) (California statute); *see also United States v. LaCasse*, 567 F.3d 763, 765 (6th Cir. 2009) (holding that violation of Michigan's "fleeing and eluding" statute presents a serious risk of physical injury to another and is a crime of violence). Ruvalcaba argues that because the statute broadly defines "occupied structure" to include many places that, in common English, are neither occupied nor structures, violation of the statute does not necessarily carry with it a serious potential risk of physical injury. However, even if the defendant knows a structure is unoccupied, firing a gun at it still poses a real risk to bystanders and others in the vicinity. *E.g.*, *Weinert*, 1 F.3d at 891 (discussing risks to neighbors, bystanders, and law enforcement from the very nature of shooting at a structure). Therefore, the district court correctly concluded that violation of section 2923.161 presents a serious risk of physical injury to another.

Ruvalcaba attempts to distinguish all of the previous decisions where our sister circuits have held that the defendant's conviction for firing a gun at a structure presents a serious risk of physical injury to another. While he is correct that no prior case presents these exact facts, the underlying theme of all of these decisions is that discharging a gun at a structure, occupied or unoccupied, in any area, urban or rural, presents a risk of physical injury to others. It is impossible to know what the bullet might hit or where it may ricochet. *See Cole*, 298 F.3d at 662 (collecting cases where ricocheting bullets injured bystanders). Therefore, because of the inherent risks associated with firearms, Ruvalcaba's prior convictions for discharging a firearm at an occupied structure presented a serious risk of physical injury to another.

Additionally, violating section 2923.161 meets the second definition of crime of violence even though the statute does not require that a person be present or believed to be present in the structure fired at. Unlike the first definition of crime of violence, which expressly requires the offense have "as an element the use, attempted use, or threatened use of physical force against another," the definition in section 4B1.2(a)(2) has no such requirement. *Compare* U.S.S.G. § 4B1.2(a)(1) *with id.* § 4B1.2(a)(2). The definition of crime of violence in section 4B1.2(a)(2) only requires that the crime pose "a serious potential risk of physical injury to another." *Id.* § 4B1.2(a)(2). Violation of section 2923.161 still presents a serious risk of physical injury even though it does not require that a person be present in the structure fired at. Ruvalcaba's argument otherwise would rob the residual clause in the second definition of crime of violence of much of its meaning.

**2.     Similarity to the enumerated crimes in the Guidelines.**

Ruvalcaba's conviction for discharging a firearm at an occupied structure is also sufficiently similar to the enumerated crimes in the Guidelines' definition of crime of violence. The definition of "crime of violence" in the Guidelines is almost identical to the definition of "violent felony" in the Armed Career Criminal Act. *See* 18 U.S.C. § 924(e)(2)(B)(ii); U.S.S.G. § 4B1.2(a)(2). Because both share essentially the same definition, we apply the same analysis to determine whether a crime is a violent felony

under the Armed Career Criminal Act and to determine whether a crime is a crime of violence under the Guidelines. *LaCasse*, 567 F.3d at 765; *Ford*, 560 F.3d at 421. Under the Armed Career Criminal Act, a crime that poses a serious risk of physical injury must also be similar in kind to the enumerated crimes to meet the definition of "violent felony." *Begay*, 553 U.S. at 142. Therefore this same restriction applies to the career offender enhancement, and even though violating section 2923.161 presents a risk of physical injury to others, it must be similar in kind to the enumerated crimes to meet the definition of a crime of violence.

In *Begay*, the Supreme Court held that for the purposes of the Armed Career Criminal Act, a conviction for driving under the influence is not a "violent felony" because it is not sufficiently similar to the enumerated crimes in the definition. *Begay*, 553 U.S. at 142 (explaining that "the provision's listed examples—burglary, arson, extortion, or crimes involving the use of explosives—illustrate the kinds of crimes that fall within the statute's scope"). The Supreme Court recognized that driving under the influence presents a great risk of injury to others, but concluded that it is unlike the enumerated crimes because it does not "involve purposeful, 'violent,' and 'aggressive' conduct." *Id.* at 144-45. Notably, driving under the influence in most states, and in the statute before the Supreme Court, is a strict liability offense and does not require any intent at all. *Id.* at 145. Therefore, in addition to posing a serious potential risk of injury to others, the prior conviction must be for a crime that is similar in kind to the enumerated crimes in section 4B1.2(a)(2) to be a crime of violence.

Unlike the drunk driving statute at issue in *Begay*, the unlawful discharge of a firearm statute that Ruvalcaba violated is sufficiently similar in kind to those listed in the Guidelines such that it may be used as a predicate for applying the career offender enhancement. Although strict liability offenses may not qualify as crimes of violence after *Begay*, we have held that crimes involving intentional, aggressive conduct are crimes of violence. *See LaCasse*, 567 F.3d at 766. In *LaCasse*, for example, we held that violation of Michigan's "fleeing and eluding" statute is a crime of violence. *Id.* That statute is not a strict liability statute, and the offender must make a conscious

decision to flee rather than stop. *Id.* The statute also involves aggressive conduct because "the offender is attempting to outrun a police cruiser either in a low speed-limit area or in a manner that results in a collision or an accident." *Id.* Here, although section 2923.161 does not require an intent to do harm, Ruvalcaba necessarily made a conscious decision to fire the gun when he discharged it at the occupied structures. Additionally, firing a gun in this way presents a risk to others and is aggressive conduct. Therefore, consistent with this Court's conclusion in *LaCasse*, violating Ohio's statute prohibiting discharging a firearm into an occupied structure is sufficiently similar in kind to the enumerated crimes that it is a "crime of violence" under the Guidelines.

Although a walkaway escape also involves purposeful conduct, and this Court has held that it is not sufficiently analogous to the enumerated crimes in the definition of crime of violence, discharging a firearm into even an unoccupied structure is qualitatively different. A walkaway escape includes conduct where the offender "leave[s] a facility without removing a physical restraint, without breaking a lock on a door, without climbing over a prison wall or security fence or without otherwise breaking through any other form of security designed to keep [him or her] put." *Ford*, 560 F.3d at 424. Even though a walkaway escape offender engages in purposeful conduct, that conduct is qualitatively different from the purposeful conduct required by the crimes enumerated in the career offender provision of the Guidelines. *Id.* at 425. While a walkaway escape is not a crime of violence, *id.*, the crimes Ruvalcaba committed are far more similar to the enumerated crimes in the Guidelines definition of crime of violence. Because a walkaway escapist by definition does not overcome any barriers, his or her intentional conduct is quite attenuated from the risk of harm. In this case, however, the intentional conduct is discharging the gun. That intentional conduct is directly related to the potential risk of harm from being struck by a bullet. Similarly, in the enumerated crimes, the risk of harm flows directly from the prohibited conduct. Therefore, violation of Ohio's unlawful discharge of a firearm statute is analogous to the enumerated crimes, and is a crime of violence under the Guidelines. Accordingly, Ruvalcaba was properly sentenced as a career offender.

III.

In selecting a sentence, the district court must consider the factors set forth in section 3553(a) and arrive at a sentence "sufficient, but not greater than necessary, to comply with" those factors. 18 U.S.C. § 3553(a); *United States v. Gunter*, 620 F.3d 642, 647 (6th Cir. 2010). A sentence will be deemed substantively unreasonable if the court "select[s] the sentence arbitrarily, bas[es] the sentence on impermissible factors, fail[s] to consider pertinent § 3553(a) factors or giv[es] an unreasonable amount of weight to any pertinent factor." *United States v. Collington*, 461 F.3d 805, 808 (6th Cir. 2006) (citations omitted) (alterations in original). This Court "appl[ies] a rebuttable appellate presumption of reasonableness to a sentence that falls within a properly calculated guidelines range." *United States v. Walls*, 546 F.3d 728, 737 (6th Cir. 2008) (citation omitted).

Applying the career offender enhancement, Ruvalcaba was subject to a Guidelines advisory range of fifteen years and eight months to nineteen years and seven months imprisonment. Ruvalcaba's within-Guidelines sentence of fifteen years and eight months imprisonment is entitled a presumption of reasonableness. *See id.* In reviewing the section 3553(a) factors the district court noted that Ruvalcaba has a lengthy criminal history, committed a serious crime, and has not shown from his prior convictions that he is likely to be quickly reformed. The district court acknowledged that Ruvalcaba's upbringing in a broken home with an abusive father was a mitigating factor, but still found that a sentence of fifteen years and eight months was appropriate. Ruvalcaba does not appear to have overcome the presumption that his sentence at the lower bound of the applicable Guidelines range was reasonable.

Additionally, the district court did not err by refusing to depart downward. Ruvalcaba argued that the court should depart downward because the attorney who represented him during his prosecution for the crimes underlying his career offender enhancement was under investigation for participating in an extensive drug conspiracy while representing Ruvalcaba. However, as the district court concluded, there is nothing to suggest that the attorney did not provide proper counsel to Ruvalcaba. Moreover,

although the district court considered arguments about a downward departure, Ruvalcaba's plea agreement contains a provision prohibiting him from arguing for a downward departure.  Therefore, the district court did not abuse its discretion by refusing to depart downward below the Guidelines advisory range.

IV.

The district court properly considered Ruvalcaba's prior Ohio state convictions in determining whether to apply the career offender enhancement and correctly concluded that they were crimes of violence.  Ruvalcaba has not overcome the presumption that his sentence at the lower bound of his Guidelines range is reasonable and his sentence is therefore **AFFIRMED**.